**In re Nelson Bunker HUNT and Caroline Lewis Hunt, Debtors.**

**Bankruptcy No. 388–35726–HCA–11.**

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

Feb. 1, 1989.

See also, Bkrtcy., 93 B.R. 484.

---

Russell L. Munsch, Michael F. Wurst, Decker, Hardt, Kopf, Harr, Munsch & Dinan, P.C., Dallas, Tex., for Nelson Bunker Hunt and Caroline Lewis Hunt, Debtors.

Grover Hartt, III, Linda C. Groves, Attys., Tax Div., Dept. of Justice, Dallas, Tex., for U.S.

Clive D. Bode, Vinson & Elkins, Dallas, Tex., Special Tax Counsel for debtor.

## MEMORANDUM OPINION

HAROLD C. ABRAMSON,
Bankruptcy Judge.

This case involves the infrequently encountered issue of whether a bankruptcy court should exercise its jurisdiction to determine a debtor's tax liability. The Debtors filed a Motion for Determination of Tax Liability Pursuant to 11 U.S.C. § 505 ("Motion for Determination"). The Internal Revenue Service ("IRS") responded by simultaneously filing both a general response and the United States of America's Motion to Modify Automatic Stay ("IRS MOTION"). Counsel for the Debtors and counsel for the IRS characterize the mo-

tions as the "flip side" of one another. The Debtors' Motion for Determination asks this Court to determine numerous and potentially substantial claims asserted by the IRS. The IRS Motion requests modification of the automatic stay to permit the IRS to proceed with liquidation of various tax claims pending in the United States Tax Court.

The IRS figures to be the largest creditor in this proceeding. It anticipates filing a proof of claim in excess of $600,000,000. The anticipated claim is based on the "1974–1978 Sourcing Cases", the "1979 Tax Case", the "1980 Uncollectible Debt/Gift Tax Dispute", the "1981 Claim for Refund", the "1982 Tax Case", the "1983 Tax Case", the Debtors' taxes for 1984, 1985, 1986, 1987 and a 1988 short year return. The parties have agreed to a modification of the automatic stay to enable the United States Tax Court to complete unresolved matters in the 1974–1978 Sourcing Cases, the 1979 Tax Case and the 1980 Uncollectible Debt/Gift Tax Dispute. The parties dispute the proper forum for resolution of the 1982 Tax Case. Following a preliminary hearing on the motions, the Court recommended a procedure whereby the parties would attempt to outline the facts underlying the 1982 Tax Case, the legal contentions involved, an estimate of witnesses and documents, the differences (if any) between the Debtors' case and those of Mr. and Mrs. Lamar Hunt (nondebtors and Mr. N.B. Hunt's brother) and an analysis of a trial in the Tax Court versus the Bankruptcy Court. The parties graciously agreed to the procedure and the Court conducted follow up conferences and hearings on the issue.

## FACTUAL BACKGROUND

The forum to resolve the 1982 Tax Case remains for decision.[1] On February 22, 1988 the IRS issued a statutory notice of deficiency (90 day letter) advising the Debtors that a $154,919,798.50 deficiency existed with respect to the Debtors' joint feder-

---

1. The Court defers ruling on the determination of Debtors' tax liabilities for the remaining tax years until the parties have an opportunity to develop the issues and determine proposed deficiency or refund amounts.

al income tax return filed for the year ended December 31, 1982 and proposed assessment of such tax liability plus interest of $122,116,353.23. On May 13, 1988 the Debtors filed a Petition in the United States Tax Court contesting the entire amount of the proposed deficiency. The case is styled *N.B. and Caroline L. Hunt v. Commissioner of Internal Revenue,* Docket No. 10141–88 ("1982 Tax Court Case"). Mr. N.B. Hunt filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code on September 21, 1988. Ms. Caroline Lewis Hunt, Mr. N.B. Hunt's wife, filed a voluntary petition under Chapter 11 on September 23, 1988. The filing of the bankruptcy petitions automatically stayed the continuation of the 1982 Tax Court Case.[2] Prior to the Debtors' petitions, the parties were in the early stages of preparing for a February 1989 trial of the 1982 Tax Case before the United States Tax Court.

## INTRODUCTION

■ The determination of a debtor's tax liability constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(B) (Supp. IV 1986), and 11 U.S.C. § 505(a)(1) (1982). As a threshold matter, 11 U.S.C. § 505 empowers the bankruptcy court to determine a debtor's tax liability provided that the merits of the tax claim have not been previously adjudicated in a contested proceeding before a court of competent jurisdiction. 11 U.S.C. § 505(a)(1). One policy behind section 505 reflects an intent to protect creditors from a defaulting debtor. "In enacting § 505, Congress was primarily concerned with protecting creditors from the dissipation of the estate's assets which could result if the creditors were bound by a tax judgment which the debtor, due to his

ailing financial condition, did not contest." *In re Northwest Beverage, Inc.,* 46 B.R. 631, 635 (Bankr.N.D.Ill.1985), *citing In re Century Vault Co.,* 416 F.2d 1035, 1041 (3d Cir.1969) and *City of Amarillo v. Eakens,* 399 F.2d 541, 544 (5th Cir.1968), *cert. denied,* 393 U.S. 1051, 89 S.Ct. 688, 21 L.Ed.2d 692 (1969). In the present case, the Debtors have neither defaulted nor evidenced an intent to default. Rather, the Debtors vigorously contest the IRS assessment and recognize the absolute need to resolve the assessment through either settlement or litigation in order to successfully reorganize. Accordingly, the policy concerns voiced by *Northwest Beverage* are not present.[3]

Section 505 also provides a mechanism to ensure prompt and orderly administration of the bankruptcy estate. "... [t]he history of this proviso [11 U.S.C. § 505] makes it clear that its purpose was to afford a forum for the ready determination of the legality or amount of the tax claims, which determination if left to other proceedings, might delay conclusion of the administration of the bankruptcy estate." *In re Diez,* 45 B.R. 137, 139 (Bankr.S.D.Fla.1984), *citing Cohen v. United States,* 115 F.2d 505 (1st Cir.1940). This Court is vigilant over prompt administration in view of this Circuit's case management directive.[4] If these Debtors are to have a meaningful reorganization plan (if any) that fulfills the reorganization requirements, prompt resolution of the 1982 Tax Case is paramount. Accordingly, this Court has grappled with the question of whether to determine the Debtors' tax liability or yield to the Tax Court. As we stated during the hearings on this issue, good reasons support retention of jurisdiction or deferring to the Tax Court.[5]

---

**2.** 11 U.S.C. § 362(a)(8) (1982).

**3.** This is not to say that at some later date the debtors may change their position. At such time this Court would possess jurisdiction to determine the 1982 Tax Case.

**4.** *In re Timbers of Inwood Forest Associates, LTD.,* 808 F.2d 363, 373 (5th Cir.1987), *aff'd on other grounds,* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988) ("Early and ongoing judicial management of Chapter 11 cases is essential if

the Chapter 11 process is to survive and the goals of reorganizability on the one hand, and creditor protection, on the other, are to be achieved.").

**5.** While the issue presently before us concerns a clash between the bankruptcy court's jurisdiction and that of the United States Tax Court, it should be remembered that the analysis *infra* applies equally to a clash with any court of appropriate jurisdiction over tax matters.

While the reported decisions uniformly recognize the Bankruptcy Court's jurisdiction to determine a debtor's tax liability,[6] the same decisions offer little guidance for when the bankruptcy court should exercise its jurisdiction. Our research uncovered only one reported decision after the enactment of the Bankruptcy Reform Act of 1978 which tersely discussed when a Bankruptcy Court should yield to the Tax Court.[7] Accordingly, we embark on an attempt to draw a general framework to help analyze the issue.[8]

## DISCUSSION

In formulating a decision to exercise his discretion, the bankruptcy judge must examine the issue case by case. The analysis necessarily includes balancing the Bankruptcy Court's need to administer the bankruptcy case in an orderly and efficient manner, the complexity of the tax issues to be decided, the asset and liability structure of the debtor, the length of time required for trial and decision, judicial economy and efficiency, the burden on the Bankruptcy Court's docket, prejudice to the debtor and potential prejudice to the taxing authority responsible for collection from inconsistent assessments. With these general factors in mind, we turn to the present case.

### TAX ISSUES INVOLVED AND SPECIALIZED TRIBUNAL

We first consider the complexity of the tax issue involved. Without going into great detail, the IRS contends that the Debtors realized $383,194,502 in income during the 1982 tax year from the dissolution of Placid Investments, LTD. ("PIL"). The IRS contention centers upon the realization of income through either one or more of the following theories: discharge from indebtedness income, discharge of guaranty rights income, or a deemed distribution of cash income. Resolution of the

IRS claim depends in a large part upon whether PIL may be characterized as a loan vehicle, without any valid business purpose, or as a partnership for federal income tax purposes. The case additionally involves estimating the value of certain properties contributed as capital contributions by the Debtors to PIL at the inception of the transaction. Complex computational adjustments relating to net operating loss carryovers, depreciation, or the like are not involved.

In analyzing the complexity of the issue involved we must not overlook Judge Goldberg's metaphorically elegant opinion in *Matter of Gary Aircraft Corp.*, 698 F.2d 775 (5th Cir.1983). After stimulating analyses (both intellectual and metaphysical) of the Government contract dispute system and the bankruptcy system, the Court held that a bankruptcy court should defer liquidation of a government contracting dispute to the Armed Services Board of Contract Appeals. The holding is premised on the notion that "[T]he ancillary jurisdiction of a bankruptcy court to liquidate claims, however, involves more nearly the administrative convenience of settling all disputes in a single forum; it is not as vital to the purpose of bankruptcy." *Id.* at 783.

In reaching the conclusion that the bankruptcy court ought to defer, the *Gary* Court refers to *Order of Railway Conductors v. Pitney*, 326 U.S. 561, 66 S.Ct. 322, 90 L.Ed. 318 (1946), *Smith v. Hoboken Railway Co.*, 328 U.S. 123, 66 S.Ct. 947, 90 L.Ed. 1123 (1946) and *Nathanson v. NLRB*, 344 U.S. 25, 73 S.Ct. 80, 97 L.Ed. 23 (1952) "for the general proposition that a bankruptcy court should defer a complicated, technical dispute to a specialized forum." *Gary Aircraft*, at 783. The Court further explains that deferral is proper because "government contracting law tends to be technical and esoteric" and that

---

**6.** See generally *Bostwick v. United States*, 521 F.2d 741, 744 (8th Cir.1975); *In re Original Wild West Foods, Inc.*, 45 B.R. 202 (Bankr.W.D.Tex. 1984).

**7.** *In re Diez*, 45 B.R. 137, 139 (Bankr.S.D.Fla. 1984) (Bankruptcy Court abstained from determination of tax claim "where no bankruptcy

purpose is served which would outweigh the importance of uniformity of assessment.").

**8.** Because we cannot predict the potential differences in each case, the factors we analyze are by no means exhaustive or exclusive.

"there are specialized fora designed specifically to resolve government contract disputes." *Id.* at 783–784.

We are mindful of the special expertise and jurisdiction that Congress has seen fit to extend to the United States Tax Courts. While a Bankruptcy Court might appear to lack the specialized understanding of certain areas of the Internal Revenue Code, Congress has equally seen fit to grant the Bankruptcy Judge jurisdiction to decide tax matters. Accordingly, we must decide if the facts warrant exercise of this jurisdiction. The IRS suggests without great explanation that the issue of whether PIL may be classified as a partnership for federal income tax purposes is one of the most complicated issues in all tax law. The IRS further argues on a continual basis that the Debtors' argument that the issue is not so complicated is inconsistent with Special Tax Counsel's Application for Employment. Viewing the record, trial of the 1982 case will involve considerable factual analysis rather than the interpretation of obscure tax statutes. "Technical or esoteric" issues that would warrant deferring to the Tax Court are not present. As we stated above, complex computational adjustments relating to net operating loss carries, depreciation, or the like are not involved. Additionally, the estimation of the value of properties is involved, something this Court performs on a regular basis. Finally, the central issue of whether PIL may be characterized as a partnership for federal income tax purposes has a plethora of case law to guide a bankruptcy court. Thus previously undecided areas of tax law would not figure in a trial. Accordingly, the nature of the tax issues to be decided in the present case does not warrant deferring to the Tax Court.

## WHIPSAW EFFECT

The starting point of our analysis focuses on the conclusory statement in *Diez* concerning "the importance of uniformity of assessment." *In re Diez, supra,* at 139. Piecing together the facts in *Diez,* the debtor stood liable for taxes owed by her estranged spouse. After Ms. Diez "failed to avail herself of the opportunity to contest"

her liability (as an "innocent spouse") in a tax court proceeding against her husband, Ms. Diez filed a chapter 7 petition to contest the same. Without explaining "the importance of uniformity of assessment" the Bankruptcy Court chose to abstain from determining the debtor's tax liability. Implicit in the abstention was the fact that a determination by the bankruptcy court could possibly conflict with the previous determination (though uncontested by the debtor) by the Tax Court. By abstaining, the Bankruptcy Judge avoided what the tax profession refers to as a "whipsaw" effect.

The Commentators state:

A whipsaw situation occurs in the tax field when two different taxpayers take positions with respect to a particular transaction which are so inconsistent with each other that only one should logically succeed—and yet, because of jurisdictional or procedural reasons, first one and then the other prevails against the government.

Remarks by Phillip R. Miller At Court of Claims Judicial Conference, October 14, 1971 on Whipsaw Problems in Tax Cases, 25 Tax Lawyer 193 (1972). This definition identifies the potential for non-uniform assessment. The public fisc ultimately suffers when a whipsaw occurs causing opposite results.

A whipsaw problem similar to *Diez* and the Miller definition exists in the present case. The IRS submits that it would necessarily be prejudiced by this Court's retention of jurisdiction due to a possible whipsaw effect involving the IRS case against Mr. and Mrs. Lamar Hunt over the same transaction. As a part of the procedure this Court recommended to resolve the issue, the parties were to demonstrate differences between the Debtors' case and Mr. and Mrs. Lamar Hunt's case. The significant differences that we glean from the record include computational adjustments. Likewise, the primary issue of whether PIL may be characterized as a partnership for federal income tax purposes should logically succeed or fail in the respective cases. However, due to jurisdictional reasons, dif-

ferent results may occur if Mr. and Mrs. Lamar Hunt's case were tried before the Tax Court on the one hand and the Debtor's case were tried in the Bankruptcy Court on the other. Indeed, the IRS points out that since Mr. and Mrs. Lamar Hunt are non-debtors, "they are not precluded from obtaining a Tax Court judgment which might be inconsistent with the decisions of this Court based on identical issues of fact and law." Accordingly, the whipsaw slices ahead.

An additional factor in the whipsaw problem is the great cost to the IRS of trying the cases in different fora, when the same issues, the same witnesses and the same documents are involved.[9] The IRS concludes that if this Court retains the case "[A]ny inconsistent or unfavorable judgment would certainly be appealed by the dissatisfied party, thereby prolonging the final resolution of these tax cases." A scenario of dual trials would certainly harm the IRS.

While the whipsaw to the IRS is evident from separate trials in the Tax Court and Bankruptcy Court we can envision a reverse whipsaw effect if the cases were all before the Tax Court. For example, if this Court were to yield to the Tax Court and for one reason or another Mr. and Mrs. Lamar Hunt's case was unable to proceed and thereby "delay conclusion of the administration of the bankruptcy estate" a reverse whipsaw effect would occur prejudicing these Debtors' future attempts to culminate plans of reorganization.

On balance, the potential whipsaw effect to the government and the problem of inconsistent assessment weighs in favor of deferring to the Tax Court, because the Tax Court would be in a better position to immunize the IRS against the threat of a whipsaw. This is achieved by trying the Debtors' case along with the related cases against Mr. and Mrs. Lamar Hunt and Mr. & Mrs. W.H. Hunt on a consolidated basis.[10] The potential reverse whipsaw to the Debtors will be prevented by modifying and conditioning the stay as we discuss below.

## PROMPT ADMINISTRATION AND BURDEN ON BANKRUPTCY COURT'S DOCKET

Also involved is the need to ensure that the claims are liquidated in a timely manner to ensure a prompt resolution of the bankruptcy case. The Debtors seek the use of the Bankruptcy Court as the forum for determination because of the Bankruptcy Court's knowledge of the dynamics of this bankruptcy proceeding as well as the ability of the Bankruptcy Court to render a final decision as early as fall 1989 versus winter 1990 for the Tax Court (assuming that the trial commenced summer 1989 and that the Tax Court entertains the matter on a expedited basis). While the first argument is sincere, it lacks practicality. Decision of the 1982 Tax Case rests on its own merits. The timing argument goes to the heart of the issue. Early resolution of the 1982 Tax Case is imperative for the Debtors (and possibly other plan proponents). While this factor weighs in favor of the Bankruptcy Court's hearing the case, the fact that the Tax Court will entertain the matter on an expedited basis lessens the inherent delays ordinarily associated with a trial before the Tax Court.

A factor closely related to the timing argument is the burden on the bankruptcy

---

9. In fact, the record reveals the Debtors and Mr. and Mrs. Lamar Hunt each filed virtually identical written protest letters on March 9, 1987, in response to the IRS's February 23, 1987 proposed adjustment letters. Moreover, the Debtors' and Mr. and Mrs. Lamar Hunt's Tax Court Petitions for the 1982 Tax Court Case are virtually identical, with the exception of numerical differences.

10. We would note that under the proper facts the potential whipsaw problem could be avoided by the bankruptcy court's determination of both a debtor's and non-debtor's tax liability. While the parties did not discuss the possibility of having this court decide Mr. and Mrs. Lamar Hunt's tax liability, our jurisdiction to decide the tax liabilities of non-debtor entities remains questionable. *See United States v. Huckabee Auto Co.,* 783 F.2d 1546, 1549 (11th Cir.1986) (Bankruptcy Code section 505 empowers the Bankruptcy Court to determine the tax liabilities of debtors and estates, not the tax liabilities of separate taxpayers who are not debtors under the Bankruptcy Code.); *In re Brandt–Airflex Corp.,* 843 F.2d 90, 96 (2d Cir.1988). *But see In re Major Dynamics, Inc.,* 14 B.R. 969 (Bankr.S.D. Cal.1981).

court's docket. Trial of the 1982 Tax Case will require a minimum of three full weeks of trial according to the parties. The IRS suggests that the Bankruptcy Court's docket would require this Court to conduct the trial in a "sporadic" and "piecemeal" fashion, whereas the Tax Court would be able to conduct the trial without interruption. This Court would undoubtedly afford the parties a full and fair opportunity to try their cases, yet cannot guarantee that some interruptions would not take our attention away from the trial, given the demands of our case docket. On the other hand, deferring to the Tax Court would conserve judicial resources because it would free this Court to consider the other matters in this proceeding as well as the many other cases on our busy docket.

A final consideration is the possible addition or elimination of a level of appeal of the 1982 Tax Case. Because the claims involve such substantial amounts, an adverse decision would negatively impact on both parties litigant. Accordingly, the parties have indicated an intent to appeal this Court's decision or that of the Tax Court before a trial has even occurred. This rationale raises an interesting question as to the respective reviewing courts. The appellate path from a Bankruptcy Court decision leads first to the United States District Court and then to the United States Court of Appeals (if necessary).[11] The appellate path from the Tax Court leads directly to the United States Court of Appeals.[12] Thus, trial before a Bankruptcy Court adds a potential layer of review, extending the time for ultimate resolution. The need for such argument points out a frustrating procedural shortcoming,[13] yet the reality of the situation calls for the Bankruptcy Court to earnestly consider deferring to the Tax Court.

The United States also argues that a trial before the Tax Court is more useful because of the Tax Court's nationwide subpoena power. The Court does not view this as a major problem because the Court can evaluate deposition testimony as well as live testimony in the trial.

## CONCLUSION

 After reviewing the above factors, we find the potential whipsaw effect and the potential delay in resolution of the 1982 Tax Case most troublesome. To fulfill the goal of providing a forum for prompt resolution to enable the efficient administration of estates and to guard against the whipsaw effect, we will fashion an order conditionally modifying the automatic stay to facilitate the Tax Court in proceeding with the resolution of these issues. Rather than terminating the automatic stay at this juncture, the automatic stay shall remain in effect except as conditionally modified. We modify the automatic stay to the extent that the parties may begin preparing for a trial before the Tax Court in July 1989. The United States may begin all discovery and preparation, file pre-hearing motions, etc. Likewise, we shall monitor the parties between now and the beginning of trial to ensure that meaningful progress occurs towards prompt trial of this case. If this Court discovers that either of the parties are delaying the resolution of these cases without good cause, it will promptly resolve the dispute by conducting a trial as early as October 1, 1989.[14] In the event that the parties progress toward a trial before the Tax Court in a meaningful manner, and upon the parties' announcement of ready for trial before the Tax Court, the automatic stay shall be modified to permit trial and appeal to a final conclusion so as to liquidate the claim of the United States.

---

**11.** 28 U.S.C. § 158(a) (Supp. IV 1986) and 28 U.S.C. § 158(d) (Supp. IV 1986), respectively.

**12.** 26 U.S.C. § 7482(a)(1) (Supp. IV 1986).

**13.** Under section 405(c)(1)(B) of the Transitional and Administrative Provisions of Bankruptcy Acts, the parties to an appeal could agree to a direct appeal to the Court of Appeals. No sim-

ilar provision exists under the current law which would eliminate this procedural imbalance.

**14.** Appropriate action will be taken if the Debtors do not diligently progress toward preparation for trial also.