**In re Jindriska PALIJ and Alexander Palij, Debtors.**

**Bankruptcy No. 92–40419.**

United States Bankruptcy Court, D. New Jersey.

July 11, 1996.

Nicholas Fitzgerald, Jersey City, NJ, for Debtors.

Karl J. Fingerhood, Trial Attorney, U.S. Department of Justice, Tax Division, Washington, DC for U.S.

### OPINION

WILLIAM F. TUOHEY, Bankruptcy Judge.

This matter comes before the court on motion of the debtors Jindriska Palij and Alexander Palij (the "debtors"), for an order reopening the debtor's 1992 chapter 7 bankruptcy case for the limited purpose of commencing a proceeding to determine the dischargeability of approximately $400,000.00 of unpaid federal employee withholding taxes allegedly owed to the Internal Revenue Service ("IRS") by Mrs. Palij pursuant to 26 U.S.C. § 6672. Mrs. Palij disputes the tax liability on the basis that she was not a "responsible person," as that term is defined under the Internal Revenue Code, from whom the IRS can collect § 6672 taxes.

On May 13, 1996, the return date of the debtor's motion, the matter was taken on the papers by consent of both counsel for the debtor and counsel for the IRS, with the understanding that the movant could reply to the United States' opposition to debtors' motion to reopen the case. On May 16, 1996 counsel for the debtors filed the debtors' reply.

The issues raised by this matter are core proceedings as defined by Congress in 28 U.S.C. section 157. The within opinion constitutes the court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

## FINDINGS OF FACT

1. On December 21, 1992, the debtors filed a petition for relief under chapter 7 of the Bankruptcy Code.

2. The debtors listed the IRS as a creditor on debtors' Schedule E—Creditors Holding Unsecured Priority Claims—in the amount of $400,000.00 for unpaid federal employee withholding taxes. The amount was listed as disputed and contingent and subject to a codebtor. (Debtors' Statement of Financial Affairs and Schedules, filed December 21, 1992, Schedule E; Affidavit of Jindriska Palij, filed April 8, 1996 at ¶ 1.)

3. A Trustee's Report of No–Distribution and order was filed on February 8, 1993.

4. An order discharging the debtors was entered on April 19, 1993.

5. The debtors' case was closed by this court on May 26, 1996.

6. On April 8, 1996, approximately three years after the case was closed, the debtors filed a motion seeking to re-open their no-asset chapter 7 bankruptcy case for the limited purpose of commencing a proceeding to determine the dischargeability of a certain "Trust Fund Recovery Penalty" assessed against Mrs. Palij by the IRS pursuant to 26 U.S.C. § 6672.[1]

7. For purposes of the debtors' motion the court assumes, based upon the absence of any evidence in the record to the contrary, that the merits of the debtors' tax claim have not been previously adjudicated in any contested proceeding before any court of competent jurisdiction.

8. In support of her motion, Mrs. Palij states that she is a medical technologist who performs clinical testing. She holds a Bachelor of Science Degree and passed national boards to become a medical technologist. (Palij Affidavit, ¶ 3i.)

9. After becoming a medical technologist, Mrs. Palij worked at New York University Medical Center. While at New York University, Mrs. Palij worked with two individuals identified to the court as Mohamed Elhosseiny and Ibtissam Elhosseiny, which individuals owned a business called "Medicon Diagnostic Laboratories, Inc." ("Medicon Diagnostic"; Palij Affidavit, ¶ 3ii.)

10. In approximately 1985, Mrs. Palij alleges she invested her life savings of $45,000 into Medicon Diagnostic, which company was already in existence at the time of her investment. (Palij Affidavit, ¶ 3ii.)

11. Apparently, at the time Mrs. Palij invested her money, there were four other co-owners (two others besides Mohamed Elhosseiny and Ibtissam Elhosseiny) who, along with Mrs. Palij, owned the company. In 1988, the other two owners left the business, leaving Mrs. Palij and Mr. and Mrs. Elhosseiny each owning one-third of the company. (Palij Affidavit, ¶ 3ii.)

12. Mrs. Palij emphatically alleges, through her submissions to this court, that because Mr. and Mrs. Elhosseiny owned over 60% of the shares of the corporation, Mrs. Palij could have "no say" in the corporation's financial dealings, management, or operation. (Palij Affidavit, ¶¶ 3ii and iii.) [2]

13. Mrs. Palij further alleges that she was induced into investing her life savings into this company and that she was unaware the corporation was in financial difficulty and

---

1. 26 U.S.C. § 6672 *Failure to Collect and Pay Over Tax, Or Attempt to Evade Or Defeat Tax* provides:

   (a) General Rule—any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 or part II or subchapter A of chapter 68 for any offense to which this section is applicable.

2. The Palij affidavit indicates that, for example, Mr. Elhosseiny kept his office door locked at all times and that only his wife had access to the office. She also alleges that she learned sometime after a chapter 11 filing by Medicon Diagnostic that Mr. Elhosseiny had purchased a surveillance system with company funds and that the system had been installed in the company offices with hidden cameras and tape recorders in every room. (Palij Affidavit, ¶ 3ii.)

had been desperate for funds. (Palij Affidavit, ¶ 3iii.)

14. Mrs. Palij further indicates that at all times, she was treated more as an employee than as an owner, which was evidenced by the fact that, for a period of one year, she received a bi-weekly paycheck as an employee, from which she believed withholding taxes were being deducted. (Palij Affidavit, ¶ 3iii.)

15. Although she was a one-third shareholder, with an official position as "treasurer," Mrs. Palij indicates that her job was actually to supervise the employees and to work as a medical technologist and that the title of "treasurer" was "more of a figurehead than anything else." (Palij affidavit, ¶ 3iii.) Notwithstanding the title as "treasurer," Mrs. Palij contends that she had nothing to do with the company payroll and that the payroll was taken care of by ADP for many years.[3]

16. The Palij affidavit also indicates that there had been a CPA advising the corporation at all times. In 1988, the Elhosseiny's hired a Steven Wee, CPA, with whom Mrs. Palij had no direct contact regarding the corporate books, records and financial strategy. (Palij Affidavit, ¶ 3vi.)

17. The Palij affidavit also states that eventually the company came under a "cloud of suspicion" because there was an allegation that Medicon Diagnostics had conducted tests without proper requisition forms from its doctors. After a one year investigation, Medicaid refused to pay Medicon's diagnostics bills which totalled approximately one million dollars. Ultimately, Medicaid withdrew its authorization for the company to conduct tests on its behalf. (Palij Affidavit, ¶ 3vii.)

18. Medicon Diagnostics filed a chapter 11 bankruptcy petition in the Southern District of New York in 1992. Mrs. Palij indicates that she was not at all involved in the Medicon Diagnostics bankruptcy proceeding. (Palij Affidavit, ¶ 3viii.)

19. Mrs. Palij further alleges that she has had no contact with Mr. or Mrs. Elhosseiny since her departure from the corporation. She indicates that since that time her several attempts to find the Elhosseiny's have failed. (Palij Affidavit, ¶ 3IX.)

20. Mrs Palij maintains that, after taking her life savings, the Elhosseinys have left her with a disputed tax liability of approximately $400,000 and that as a result of which tax liability she is unable to gain the "fresh start" afforded her under her discharge of liability under the Bankruptcy Code. (Palij Affidavit, ¶ 3X; ¶ 2). She now seeks an order to re-open this case for the purpose of filing a motion to determine the dischargeability of the debt which has been assessed against her pursuant to section 6672 of the Internal Revenue Code.

21. In opposition to the debtors' motion, counsel for the IRS argues that upon a review of the debtors' motion, Mrs. Palij seeks not to challenge the *dischargeability* of the taxes assessed against her by the IRS pursuant to 26 U.S.C. § 6672, but rather seeks to challenge the *merits* of the assessment made against her, by having the court make a determination regarding liability for those taxes pursuant to section 505 of the Bankruptcy Code.[4] (United States' Opposition to Debtors' Motion To Re–Open Case, filed May 6, 1996, P.2.)

## DISCUSSION

■ The specific issue presented by the motion before the court is whether this court should allow the debtors to re-open their no-asset chapter 7 case so as to allow the debtors to file a motion pursuant to section 505 of

---

**3.** Mrs Palij explains that she was told to sign some papers for ADP and that thereafter her signature appeared on the payroll checks but that it was not an original signature. (Palij Affidavit, ¶ 3v.) All paychecks did not have to be signed by Mrs. Palij, but had to be co-signed by either Mr. or Mrs. Elhosseiny.

**4.** 11 U.S.C § 505 provides in pertinent part:

11 U.S.C § 505 *Determination of Tax Liability* (a)(1) Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

the Bankruptcy Code with respect to the assessment of taxes against Mrs. Palij pursuant to section 6672 of the Internal Revenue Code.

Upon a thorough examination of Bankruptcy Code sections 350(b) and 505, Bankruptcy Rule 5010, and Internal Revenue Code section 6672, and the case law cited by the parties in this matter, this court holds that the debtors' request to reopen their closed chapter 7 case should be denied for the reasons which follow.

### ANALYSIS

At the outset, although not cited by counsel for either of the parties in this matter, the court notes that a motion to re-open a closed bankruptcy proceeding is governed by Bankruptcy Code section 350(b)[5] and Bankruptcy Rule 5010. Pursuant to section 350(b), a case may be reopened in the court in which it was closed for the purpose of administering assets, according relief to the debtor, or for other cause. 11 U.S.C. § 350(b). A request for reopening a case must be made by motion of the debtor or another party in interest. Federal Rule of Bankruptcy Procedure 5010. Courts have expressed a reluctance to permit reopening of a case unless there is good cause. Weintraub and Resnick, *Bankruptcy Law Manual*, § 1.15 (3rd. ed.).

In the case of *In re Rediker*, 25 B.R. 71, 73 (MD Tenn.1982), the court held that "[t]he reopening of a case rests within the sound discretion of the court, and the case will only be reopened upon the demonstration of compelling circumstances justifying the reopening." See also *In re Adams*, 41 B.R. 933 (D Me.1984). In exercising its discretion to reopen a case, "the bankruptcy court should exercise its equitable powers with respect to substance and not technical considerations that will prevent substantial injustice." *In re Shondel*, 950 F.2d 1301, 1304 (7th Cir.1991). At least one commentator has stated that "the trend in reopening cases under section 350(b) has thus been to allow the bankruptcy judge broad discretion to weigh the equitable factors in each case." Weintraub and Resnick, *Bankruptcy Law Manual*, § 1.15 (citing Saber, "Section 350(b): the Law of Reopening," 5 Bankr. Dev.J. 63, 82 (1987)).

In support of their motion to reopen, debtors argue that at the time her case was originally filed, Mrs. Palij believed that the IRS would "go after the people who were truly responsible for the debt," but that instead the IRS is attempting to collect the debt from Mrs. Palij. (Debtor's Reply, filed May 16, 1996). Moreover, the debtor contends that a case may be reopened not only to benefit creditors, as is contended by the IRS, but also to benefit the debtor. (Debtors' Reply, ¶ 2.)

The IRS for its part contends that assessments made against Mrs. Palij pursuant to section 6672 of the Internal Revenue Code are nondischargeable in bankruptcy. Moreover, with respect to the ability of a court to make a determination of tax liability under section 505 of the Bankruptcy Code, counsel for the IRS argues, first, that in enacting section 505 of the Bankruptcy Code, Congress intended to protect creditors from the dissipation of the estate's assets which could result if the creditors were bound by a tax judgment which the debtor, due to his ailing financial condition did not contest. Counsel for the IRS cites the case of *In re Hunt*, 95 B.R. 442, 444 (Bankr.N.D.Tex.1989) and the cases cited therein for this proposition. (United States' Opposition, ¶ 3). Second, counsel argues that another purpose of section 505 is to provide a mechanism to ensure prompt and orderly administration of the bankruptcy estate by providing a forum for making determinations of tax claims, which determinations, if left to other proceedings, "might delay conclusion of the administration of the bankruptcy estate." *In re Hunt*, 95 B.R. at 444. Moreover, counsel for the IRS argues that this is a no-asset case and accordingly, there will be no distribution to any creditor, including the IRS. Finally, the IRS argues that since another individual might

---

5.  11 U.S.C. 350(b) provides:

§ 350.  Closing and reopening cases

A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause.

have been assessed under 26 U.S.C. § 6672 in connection with the corporation for which Mrs. Palij may have been assessed for the same withholding taxes, it would be more "economical" to have the issues raised by the debtors' complaint heard in the United States District Court in a joint proceeding against the debtor and the other officers of the corporation.

■ In applying its balance of the equities analysis regarding the reopening of this case to the facts herein, the Court finds in accord with the cases cited by the IRS that the "Trust Fund Recovery Penalty" assessed pursuant to 26 U.S.C. § 6672 has been held to be nondischargeable in bankruptcy. *United States v. Pepperman*, 976 F.2d 123, 126 (3rd Cir.1992) (citing 11 U.S.C. § 523(a)(1)(A) and § 507(a)(7)(C); *In re Garrett*, 126 B.R. 486 (Bankr.E.D.Va.1991); *In re Matlock*, 104 B.R. 389 (Bankr.N.D.Okla.1989); *In re Madia*, 68 B.R. 11 (Bankr.D.N.J.1986); *In re Clark*, 64 B.R. 437 (Bankr.M.D.Fla.1986); *In re Ribs–R–Us*, 828 F.2d 199, 201 (3rd Cir. 1987) (citing 11 § 523(a)(1)(A); *United States v. Sotelo*, 436 U.S. 268, 277, 98 S.Ct. 1795, 1801, 56 L.Ed.2d 275 (1978)); *United States v. Stanmock (In re Stanmock)*, 103 B.R. 228, 229 (9th Cir. BAP 1989).[6]

In *United States v. Pepperman*, 976 F.2d at 126 the Third Circuit has eloquently set forth the rationale behind the non-dischargeability of liability imposed under section 6672 of the Internal Revenue Code. In *Pepperman*, the court stated:

> As the Supreme Court has recognized, the trust fund taxes that employers are required to collect from their employees' wages and pay over to the government "can be a tempting source of ready cash to a failing corporation beleaguered by creditors." *Slodov v. United States*, 436 U.S.

238, 243, 98 S.Ct. 1778, 1783, 56 L.Ed.2d 251 (1978). The loss to the U.S. treasury when a corporate employer fails to pay over its trust fund taxes can be substantial because the employees are credited with the amounts withheld even if the taxes were not paid over to the government. See 26 U.S.C. § 31(a) (1988).

Because of this concern, see *United States v. Sotelo*, 436 U.S. 268, 277 n. 10, 98 S.Ct. 1795, 1801 n. 10, 56 L.Ed.2d 275 (1978), Congress through section 6672 of the Internal Revenue Code, enacted the stringent measure of imposing personal liability on those individuals whose control over the financial affairs of a business entity requires them to collect and pay over taxes withheld from the employees. See *Slodov*, 436 U.S. at 244–45, 98 S.Ct. at 1784; *Quattrone Accountants, Inc. v. IRS*, 895 F.2d 921, 927 (3d Cir.1990). The provision making a responsible person liable for an amount equal to the trust fund taxes that were not paid over to the government establishes an alternative source of collection for the government to make the public fisc whole. *Slodov* 436 U.S. at 243–45, 98 S.Ct. at 1783–84. *To ensure further that the government will, in fact, be paid, liability under section 6672 is not dischargeable in bankruptcy. See 11 U.S.C. §§ 523(a)(1)(A), 507(a)(7)(C) (1988).* (Emphasis added.)

Having found that Mrs. Palij's potential liability would be nondischargeable in bankruptcy should the court reopen, the only question would then become whether Mrs. Palij may be considered a "responsible person" under the Internal Revenue Code against whom section 6672 taxes can be assessed.[7] While the court finds that it has the

---

6. Although not raised by the parties as an issue in the present case, the question of whether or not the government filed a claim in the debtors' bankruptcy proceeding has been held to be irrelevant insofar as the penalty assessment is not dischargeable and the IRS may seek to recover from the debtor post-discharge. *In re Queen*, 148 B.R. 256, 258 (S.D.W.Va.1992).

7. In discussing Mrs. Palij's alleged nondischargeable debt, the court is aware that under the former Bankruptcy Act bankruptcy courts were clearly empowered, in conjunction with dis-

chargeability litigation, to determine the amount of prepetition tax liability which was nondischargeable, so long as the tax had not been paid and so long as liability had not been contested prepetition. *In re Shapiro*, 188 B.R. at 146. The judicial power to fix the amount of nondischargeable debts was not made an express part of the present Code. *In re Shapiro*, 188 B.R. at 147. Consequently, courts have held that, based upon the evolution of present section 505, a bankruptcy judge has the *power* to fix a debtor's nondischargeable tax liability, but *need not always do*

authority in its discretion to reopen this matter pursuant to Bankruptcy Code section 350(b), and further that pursuant to section 505 it again has the authority in its discretion to make determinations regarding the amount or legality of taxes assessed against a debtor, pursuant to 26 U.S.C. § 6672, see *In re Shapiro,* 188 B.R. 140, 143 (Bankr. E.D.Pa.1995), the court chooses to abstain from exercising its discretion under either § 350(b) or § 505 for the reasons which follow.

First, the court notes that, as cited by counsel for the IRS, and reiterated here, section 505 has a dual purpose, neither of which purposes are served should the court reopen in the matter *sub judice.* In the case of *In re Hunt,* the bankruptcy court recognized that "one policy behind section 505 reflects an intent to protect creditors from a defaulting debtor." 95 B.R. at 445 (citing *In re Northwest Beverage, Inc.,* 46 B.R. 631, 635 (Bankr.N.D.Ill.1985)). In the present case, the court accepts the IRS' argument that the aforestated first policy has no application here since there are no other creditors affected by the issues raised in this proceeding. Second, the *Hunt* court recognized that another purpose of section 505 is to provide a mechanism to ensure prompt and orderly administration of the bankruptcy estate. *In re Hunt,* 95 B.R. at 444 (citing *Cohen v. United States,* 115 F.2d 505 (1st Cir.1940)); *In re Diez,* 45 B.R. 137 (Bankr.S.D.Fla.1984). As applied to the facts herein, the second purpose is also inapplicable as this is a *closed* chapter 7 proceeding. The above finding is amply supported by case law. For example, in the case of *In re Diez,* 45 B.R. 137, the court specifically found that this second purpose of a section 505 determination was not served in a no-asset case involving no parties other than the IRS and the debtor. 45 B.R. at 139. *Diez* involved a chapter 7 debtor who listed the IRS as her only creditor. The debtor had nominal assets and the sole purpose of the bankruptcy was to contest the debtor's liability for a tax deficiency and fraud penalty of her estranged husband. Similar to the case *sub judice,* wherein the

so. *In re Shapiro,* 188 B.R. at 148; *see also Cain v. United States (In re Cain),* 142 B.R. 785, 788

debtor claims not to have been a "responsible person" under the Internal Revenue Code, the debtor in *Diez* claimed to be an "innocent spouse" within the provisions of the Internal Revenue Code. The court in abstaining to exercise its discretion under section 505 stated:

> Without any question, this court *may* determine the amount or legality of any tax, any fine or penalty relating to a tax, with certain exceptions not pertinent here. § 505(a)(1). However, the history of this proviso makes it clear that its purpose was to afford a forum for the ready determination of the legality or amount of tax claims, which determination, if left to other proceedings, might delay conclusion of the administration of the bankruptcy estate. *Cohen v. United States,* 115 F.2d 505 (1st Cir.1940); *Collier on Bankruptcy,* ¶ 505.01 n. 1 (15th ed). That purpose has no application in this no-asset case involving no parties other than the debtor and the IRS.
>
> This court may and should abstain from hearing the controversy where no bankruptcy purpose is served which would outweigh the importance of uniformity of assessment. *Id.* ¶ 505.04[1] n. 5. (Emphasis in original.)

45 B.R. at 139.

Further, in another case analogous to the case at bar, the court in *In re Kaufman,* 115 B.R. 378 (Bankr.S.D.Fla.1990) abstained from determining the dischargeability of § 6672 liability in a no-asset case, finding that the determination would have no effect on the administration of the bankruptcy case. In abstaining from determining the debtor's alleged § 6672 tax liability, the *Kaufman* court emphasized that even in a case where there are creditors other than the IRS, the fact that no bankruptcy purpose would be served by such a determination, warrants an abstention by the bankruptcy court, since in a no-asset case no distribution will be made to the IRS from the debtor's estate. Moreover, the *Kaufman* court found that the debtor could seek a determination in "any

(Bankr.W.D.Tex.1992).

other appropriate forum" without involving the bankruptcy court in a determination that would serve no bankruptcy purpose. 115 B.R. at 379.

Finally, the court finds significant, the decision of the District Court of the Southern District of West Virginia in the case of *In re Queen*, 148 B.R. 256 (S.D.W.Va.1992) aff'd 16 F.3d 411, 1994 WL 12029 (4th Cir.1994). In *Queen*, a case on almost all fours with the one at bar, a discharged chapter 7 debtor moved to reopen a closed bankruptcy proceeding to prohibit the IRS from recovering a "responsible person" penalty assessed pursuant to 26 U.S.C. § 6672. The district court held, *inter alia*, that the bankruptcy court correctly found that section 505 of the Bankruptcy Code specifically provided the bankruptcy court with the authority to determine the propriety of a § 6672 penalty assessment, but that the exercise of such authority is within the discretion of the court. 148 B.R. at 259. In exercising its discretion, the district court stated that the bankruptcy court should consider, among other things:

> the complexity of the tax issues to be decided, the need to administer the bankruptcy case in an orderly and efficient manner, the burden on the Bankruptcy Court's docket, the length of time required for trial and decision, the asset and liability structure of the debtor, and the prejudice to the debtor and potential prejudice to the taxing authority. 148 B.R. at 259 (citing *In re Galvano*, 116 B.R. 367, 372 (Bankr. E.D.N.Y.1990)).

For the foregoing reasons, this court finds that nothing would be gained by having the bankruptcy court, rather than another court of competent jurisdiction, adjudicate the debtor's alleged tax liability under section 6672 of the Internal Revenue Code. If found, by another court of competent jurisdiction not to be a "responsible party" against whom section 6672 taxes can be assessed under the Internal Revenue Code, the debtor will in deed be relieved of her alleged liability. Therefore, this court will abstain from making such a determination on debt-

or's request to reopen this proceeding pursuant to section 350(b) of the Bankruptcy Code.