**In re Rita L. JAMES, Debtor.**

**No. 05–78523–MHM.**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Feb. 19, 2013.

---

Susan H. Shiptenko, Teresa R. Stephens, Law Offices of Matthew T. Berry, Atlanta, GA, Kelly D. Thomas, Berry and Associates, Atlanta, GA, for Debtor.

## REOPENING ORDER

MARGARET H. MURPHY,
Bankruptcy Judge.

On September 6, 2012 Debtor filed a *Motion to Reopen Chapter 13 Case.* (Doc. No. 22) ("Motion"). Intown Ventures, LLC opposes the Motion.

Debtor is 77 years old, and has resided at 539 Baker Circle, NW, Atlanta, Fulton County, Georgia since 1964. Debtor's residence is identified as Fulton County Tax parcel No. 14–0178–0005–047–3. Since 1994, Debtor has owned the property free and clear of any mortgage or security deed. In 2005, Debtor filed a Chapter 13 case. Debtor's confirmed Chapter 13 Plan provided for 100% payment to her creditors.[1]

Intown Ventures, LLC ("Intown") purchased a property identified as Fulton County Tax Parcel No. 14–0178–0005–046–5, referencing an address of "[No Street Number] Baker Circle" or "Zero Baker Circle," at a tax sale November 5, 2002. On August 24, 2004, Intown filed suit in Fulton County to quiet and perfect title

---

1. Matthew T. Berry represents Debtor in her Chapter 13 proceedings.

(the "2004 Lawsuit").[2] Intown presented no evidence that Debtor was served with this lawsuit, nor did she make an appearance during its pendency. Order and Judgment were entered March 31, 2005.

Subsequent to the 2004 Lawsuit, in December 2007, Intown filed suit against Debtor in magistrate court, averring, *inter alia,* that Intown owned at least part of the property located at 539 Baker Circle and therefore Debtor was required to turn her property over to Intown, together with rent arrears.[3] On January 24, 2008, Intown voluntarily dismissed this lawsuit.

On September 26, 2008, Intown filed another complaint against Debtor for ejectment, trespass, nuisance, and attorney fees (the "Ejectment Action").[4] On November 10, 2008, Debtor's litigation counsel, Francis X. Moore ("Litigation Counsel"), filed an Answer and Counterclaim, denying the material allegations in the Ejectment Action and counterclaiming for trespass and tortious interference with property rights, intentional infliction of emotional distress, breach of duties, libel and slander to title, punitive damages, and fees.

Litigation Counsel first learned of his client's Chapter 13 case February 13, 2009, and proceeded to inform Intown's counsel and the state court of this case. On March 6, 2009, the Ejectment Action was stayed. Intown was not listed in Debtor's Schedules[5] as a creditor in this case, and it

neither made an appearance nor filed a proof of claim in this case.

Beginning February 2009, the Chapter 13 Trustee, Adam Goodman ("Trustee"), exchanged emails with Debtor's Litigation Counsel. Through these emails, Mr. Goodman made clear that he would have no interest in pursuing a tort claim on behalf of Debtor's estate in this case. In February 2009, Debtor was only a few payments from successfully completing her Chapter 13 plan, thus entitling her to a discharge, and having this case closed. Even if Debtor had amended her Schedules to list her counterclaim while the bankruptcy case was still open, which she did not, the Chapter 13 Trustee would not have claimed an interest in Debtor's counterclaim. In the *Stipulated Facts for Purposes of Motion to Reopen Bankruptcy* ("Stipulated Facts"), it is admitted that "it would not have benefitted any of Mrs. James' creditors for the Chapter 13 Trustee to have undertaken the pursuit of Mrs. James' tort or other claims." Stipulated Facts at ¶ 15.

On April 17, 2009, an order was entered discharging Debtor and this Chapter 13 case was closed. On April 28, 2009, Intown's counsel requested that the stay of the Ejectment Action be lifted, which was granted. On April 11, 2011, the Fulton County Superior Court entered summary judgment in favor of Intown. On appeal, however, the Georgia Supreme Court reversed, concluding that the material facts were disputed.[6] After losing at the Geor-

---

**2.** Fulton County Civil Action No. 2004–CV–90150

**3.** *Intown Ventures, LLC v. Rita L. James,* Magistrate Court of Fulton County, Civil Action File No. 07–ED–366906.

**4.** *Intown Ventures, LLC v. Rita L. James,* Superior Court of Fulton County, Civil Action File No.2008–CV–157543.

**5.** Section 521(a) and Bankruptcy Rule 1007(b) require a debtor to file schedules of assets and liabilities, a schedule of current income and expenditures, a schedule of executory contracts and unexpired leases, and a statement of financial affairs (the "Schedules").

**6.** Namely, the facts disputed were whether Mrs. James was served in the 2004 Lawsuit and whether 539 Baker Circle is the same

gia Supreme Court, on June 1, 2012, Intown voluntarily dismissed its claims against Debtor, but moved for summary judgment on Debtor's counterclaims against it on the theory of judicial estoppel, contending that Debtor's failure to amend her Schedules to include that counterclaim barred its consideration in State Court. On September 6, 2012, Debtor filed in this court a *Motion to Reopen* her closed bankruptcy case to disclose those counterclaims.

## DISCUSSION

■■■■ The reopening of a closed case is governed by Section 350(b) of the United States Bankruptcy Code, 11 U.S.C. § 350(b):

> A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause.

"The decision on whether to reopen a case is within the sound discretion of the bankruptcy court." *In re Upshur*, 317 B.R. 446, 450 (Bankr.N.D.Ga.2004). Furthermore, the bankruptcy court "should exercise its discretion based upon the peculiar facts present." *In re Barger*, 279 B.R. 900, 904 (Bankr.N.D.Ga.2002) (*quoting In re Lewis*, 273 B.R. 739, 743 (Bankr. N.D.Ga.2001)).

Intown raises three arguments, including two equitable defenses, to support its position that this case should not be reopened.

### I.

■■■■ First, Intown contends that Debtor is guilty of laches. Laches is an equitable doctrine in which "relief is denied to one who has been guilty of unconscionable delay, as shown by surrounding

piece of property that was sold by tax deed as "Zero Baker Circle." *James v. Intown Ven-*

facts and circumstances, in seeking that relief." BALLENTINE'S LAW DICTIONARY (3d ed. 2010). The party asserting laches must show "that plaintiff's delay in filing suit was unreasonable and ... defendant would suffer prejudice caused by the delay if the suit were to continue." *Au–Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 603 F.3d 1133, 1139 (9th Cir.2010). Intown relies in part upon *In re Delfino*, 351 B.R. 786 (Bankr.S.D.Fla.2006) for guidance, but *Delfino* is decidedly inapposite.

In *Delfino*, petitioner-debtor sought to reopen a closed Chapter 7 case "over seven years after the case was closed." *Delfino*, at 788. Debtor's attorney in both the state and bankruptcy courts was Mr. Francisco, who evidently was no longer a bankruptcy practitioner although he continued to represent Delfino in that capacity. The *Delfino* court characterized Mr. Francisco's "professional conduct as abhorrent, gratuitously nasty, and thoroughly unprofessional. He is, in short, a lawyer for whom professionalism is an alien concept." *Id.* at 788. The court also noted that Mr. Francisco "engaged in the kind of obnoxious behavior that has come to give lawyers a bad name." *Id.* The court concluded that the debtor "thoroughly approved of his lawyer's aggressive tactics," which it believed were undertaken in an effort to monetarily enrich Mr. Francisco by unnecessarily prolonging a state court action against the Delfino's self-interest. The instant facts are substantially different from the ones in *Delfino*.

■■■■ Whereas in *Delfino* the debtor needlessly delayed for over seven years to reopen his bankruptcy case, Mrs. James' attorney petitioned to reopen slightly over three years after this case was closed. However, "[l]aches is not, like limitation, a

*tures, LLC*, 290 Ga. 813, 725 S.E.2d 213 (2012).

mere matter of time, but attaches only to parties who have *unjustifiably* delayed in bringing suit. The doctrine is equitable in nature and its application turns on whether the party seeking relief delayed inexcusably or unreasonably in filing suit, not simply whether the party delayed." *Menominee Indian Tribe of Wis. v. United States,* 614 F.3d 519, 531 (D.C.Cir.2010) (internal citations omitted). Intown presented no evidence in this case of such egregious behavior as in *Delfino.*

The second factor to consider in determining whether laches should apply is whether the (here, putative) creditor has been prejudiced. For the purpose of illustration, most instances in which courts have found prejudice occur when the movant has had to incur expenses that, but for the unconscionable delay, would not have been incurred. For example, prejudice was found when a lienholder had to incur expenses when it made and defended motions in state court to renew its judgment lien, which the debtor sought to avoid by reopening his bankruptcy case. *In re Bianucci,* 4 F.3d 526 (7th Cir.1993).

Intown states that it "has incurred no less than of [sic] $27,000.00 in attorney's fees in the Ejectment Action since Debtor's discharge." While this may be true, it is arguably irrelevant. Given the facts presented by the parties, up until this point, the Ejectment Action has been pursued by Intown and entirely dealt with Intown's claim against Mrs. James, not the counterclaim propounded by Debtor. In fact, until the summer of 2012, the Ejectment Action was being litigated in Georgia's Appellate Court system. It would be fallacious, therefore, to suggest that Intown was prejudiced by having to pay its attorneys to litigate its own claim, which it

subsequently voluntarily dismissed. As far as the record reflects, Debtor's counterclaim against Intown has not been litigated at all; therefore, Intown's alleged financial prejudice caused by Debtor's failure to list the counterclaim in her bankruptcy schedules lacks substantial foundation.[7]

## II.

▮ Next, Intown argues that the principle of judicial estoppel should prevent reopening of this case. The doctrine of judicial estoppel "precludes a party from asserting a position in one judicial proceeding which is inconsistent with a position successfully asserted by the party in an earlier proceeding." *Clark v. Perino,* 235 Ga.App. 444, 509 S.E.2d 707 (1998). The charge of judicial estoppel is to protect the integrity of the judiciary, not creditors. *Smalls v. Walker,* 243 Ga.App. 453, 532 S.E.2d 420 (2000). Intown relies principally and unjustifiably on cases that applied judicial estoppel with inapposite factual backgrounds—*e.g., Burnes v. Pemco Aeroplex, Inc. (In re Burnes),* 291 F.3d 1282 (11th Cir.2002).

▮ Intown has asserted no persuasive argument that judicial estoppel should apply either in this case or in a state court proceeding. Although the doctrine has no "inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel," the Eleventh Circuit has provided a useful framework under which courts should evaluate the affirmative defense of judicial estoppel. *New Hampshire v. Maine,* 532 U.S. 742, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001). "First, it must be shown that the allegedly inconsistent positions were made under

---

7. If Intown intended to argue it was prejudiced by litigation of the Ejectment Action because it should have been disclosed in Debtor's bankruptcy schedules, that litigation has died by Intown's own hand and is not the subject of the motion to reopen.

oath in a prior proceeding. Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system." *Salomon Smith Barney, Inc. v. Harvey*, 260 F.3d 1302 (11th Cir. 2001).

■ Intown does not seriously contend that Debtor's allegedly inconsistent position, namely her failure to schedule a counterclaim against Intown in this successful Chapter 13 case, was not made under oath in a prior proceeding. *See Ajaka v. Brooksamerica Mortgage Corp.*, 453 F.3d 1339, 1344 (11th Cir.2006) (holding that failure to amend a Chapter 13 plan to reflect a pending claim constitutes inconsistent positions under oath). Therefore, the only issue related to the application of judicial estoppel is whether Debtor's failure to list her counterclaim against Intown in her Chapter 13 schedules was "calculated to make a mockery of the judicial system." The evidence of record does not support such a conclusion.

■ In applying the second prong of the *Harvey* test, a court must focus on two specific terms. First, a court must determine that the alleged inconsistency was "calculated." Then, the court must determine that it made a "mockery" of the judicial system. In order for an inconsistency to be calculated, a level of intentionality on the part of the debtor is required. "[T]he doctrine of judicial estoppel applies in situations involving intentional contradictions, not simple error or inadvertence." *Burnes v. Pemco Aeroplex, Inc.* (*In re Burnes*), 291 F.3d 1282, 1286 (11th Cir. 2002). "[T]he debtor's failure to satisfy its statutory disclosure duty is 'inadvertent' only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment." *Burnes v. Pemco Aeroplex, Inc.* (*In re Burnes*), 291 F.3d 1282, 1286 (11th Cir. 2002) (citations omitted).

Debtor had no motive to conceal her counterclaim against Intown from this court. Debtor was operating under a Chapter 13 repayment plan that provided for full payment to her creditors. In fact, Debtor's Litigation Counsel even spoke with the Chapter 13 Trustee in an effort to ascertain whether the Trustee, on behalf of the Debtor's estate, would be interested in pursuing the counterclaim against Intown. Unsurprisingly, the Trustee declined because doing so would serve no bankruptcy purpose to Mrs. James' repayment plan or her creditors. *See, e.g., Grant v. George Schumann Tire & Battery Co.*, 908 F.2d 874 (11th Cir.1990) (holding that trustee's attorney may not be compensated for recovery of property in excess of claims owed by the debtor). In short, Debtor did not possess the deceptive intention that the doctrine of judicial estoppel was specifically crafted to punish; therefore, Debtor made no "calculated" decision to conceal information from this court.

Intown attempts to persuade this court with cases that found judicial estoppel to be applicable. In these cases, however, the debtors had motives to conceal potential causes of action from the court. In *Burnes*, for example, the debtor's concealment of an employment claim allowed for him to convert a Chapter 13 case to a Chapter 7, and gave him the benefit of a "no asset" discharge, neither of which he would have received had he disclosed the lawsuit. *Burnes*, 291 F.3d at 1288.

Even if this court were to find that Debtor's failure to amend her Schedules was "calculated," it would still need to find that Debtor's calculation was intended to "make a mockery of the judicial system." In spite of Intown's protestations to the contrary, Mrs. James' actions were neither calculated to, nor did they, make a mockery of the courts. Intown presents little specific argument on this issue, apparently

suggesting that this court simply *presume* a motive to conceal and *ipso facto* find Debtor's conduct to mock the judiciary. By its own admission, however, Intown believes that an inadvertent omission would likely not be considered to mock this court. If the failure to disclose is inadvertent, *a fortiori* the debtor had no intention to make a mockery of the judicial system. *See Burnes, supra.* Because Debtor derived no benefit, financial or otherwise, from her failure to list the counterclaim on her Schedules, Intown has shown no motive to conceal, and therefore Debtor's failure to earlier amend her Schedules was not calculated to make a mockery of the judiciary.[8]

In the context of a bankruptcy case, the judicially crafted equitable doctrine of judicial estoppel serves a specific and important purpose. The caselaw is replete with instances in which an individual debtor hid from the bankruptcy court a potential asset in the form of a lawsuit. In such cases, when a debtor had a motive to conceal, such as financial gain at the expense of creditors, courts have stepped in to prevent such injustice. Judicial estoppel is integral to ensuring that a debtor does not unjustly enrich herself to the detriment of creditors by concealing assets. Debtor, however, possessed no such insidious motive. Given that her almost-completed Chapter 13 plan provided for 100% repayment to her creditors, an additional asset in the form of an unliquidated claim against Intown would have done nothing to supplement the bankruptcy estate, or provide for more complete repayment to her creditors. Furthermore, as evidenced by Debtor's attorney's conversations with the Chapter 13 Trustee, concealment of a potentially valuable asset was neither intended nor accomplished.

Therefore, judicial estoppel is inapplicable to prevent reopening this bankruptcy case.[9]

### III.

■ Section 350 of the Bankruptcy Code contemplates reopening a previously closed matter "to administer assets, to accord relief for the debtor, or for other cause." Courts have looked to three interests in determining whether to reopen a closed bankruptcy case: (1) benefit to the debtor; (2) prejudice or detriment to the opponent of reopening; and (3) benefit to the debtor's creditors. *In re Tarrer,* 273 B.R. 724, 732 (Bankr.N.D.Ga.2001); *In re Maloy,* 195 B.R. 517, 518 (Bankr.M.D.Ga. 1996).

As in *Tarrer,* the benefit to Debtor in reopening this case is the protection of her state court counterclaim from being potentially dismissed due to judicial estoppel. Assuming, therefore, that Debtor were to prevail on her counterclaim, she would be entitled to collect a sum of money from Intown. Arguably, if this case is not reopened to allow Debtor to amend her schedules, Intown may prevail in state court on the equitable defense of judicial estoppel, preventing Intown from having to pay a sum of money to Debtor. Therefore, "the first two factors neutralize one another, as any benefit to Debtor would

---

8. The numerous emails exchanged with the Chapter 13 Trustee negate a finding of malicious concealment. Even if Debtor should have listed the counterclaim during the pendency of her bankruptcy case, her failure to do so was an understandable inadvertence caused by Trustee's disinterest in pursuing the counterclaim.

9. Given the case law on the matter, it appears Intown has no factual basis upon which to argue Mrs. James should be judicially estopped from pursuing her counterclaim in State Court.

have to come as a detriment to the Objecting Parties." *In re Tarrer*, 273 B.R. at 733 (internal citations omitted). Therefore, the controlling factor in this matter appears to be whether Debtor's creditors would benefit from the reopening of her bankruptcy case.

 "To justify reopening, the likelihood of recovering additional assets must be substantial. If there is only a remote possibility of obtaining assets that would provide a meaningful distribution, the bankruptcy court may decline to reopen the case." 3–350 WM. MILLER COLLIER ET AL., COLLIER ON BANKRUPTCY ¶ 350.03 (16th ed. 2010). Debtor has already repaid her creditors in full. If Debtor were to prevail on her counterclaim and collect a monetary award from Intown, neither her estate nor her former creditors would benefit because they have already been fully compensated. "[W]hen the purpose of the motion to reopen is to add an undisclosed asset, the most important consideration is the benefit to the creditors." *In re Upshur*, 317 B.R. 446, 450 (Bankr.N.D.Ga.2004) (Bihary, J.). "[T]he fact that no bankruptcy purpose would be served by re-opening warrants an abstention by the bankruptcy court." *In re Palij*, 202 B.R. 27, 32 (Bankr.D.N.J. 1996). Given the facts unique to the instant case, Debtor's creditors would enjoy no benefit if her case were reopened,

While Debtor's motion to reopen her bankruptcy case is unnecessary, reopening may prevent the imposition of judicial estoppel to prevent Debtor's prosecution of the counterclaim against Intown. Therefore, this case should be reopened, and Debtor's Schedule B should be deemed amended to disclose the counterclaim against Intown as an asset, accordingly, it is hereby

ORDERED that this case is *reopened:* Debtor's Schedule B is deemed *amended* to disclose the counterclaim against Intown as an asset; the asset is deemed fully administered; and, if no further proceedings are filed within 28 days from entry hereof, the Clerk is authorized to re-close the case.

**The Clerk, U.S. Bankruptcy Court, is directed to serve** a copy of this order upon Debtor, Debtor's attorney, the Chapter 13 Trustee, and all creditors and parties in interest.

IT IS SO ORDERED.