

**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP Nos. AZ-15-1165-JuKuJa |
| ) | AZ-15-1166-JuKuJa |
| CAPITAL OPTIONS, LLC, ) | AZ-15-1167-JuKuJa |
| ) | (Related Appeals) |
| Debtor. ) | |
| _____ ) | Bk. No.  2:12-bk-12-13416-GBN |
| ) | |
| CAPITAL OPTIONS, LLC, ) | Adv. Nos. 2:14-ap-00158-GBN |
| ) | 2:14-ap-00166-GBN |
| Appellant, ) | |
| ) | |
| v. ) | **M E M O R A N D U M**[*] |
| ) | |
| C. DENNIS LOOMIS; BAKER ) | |
| HOSTETLER, LLP; GEORGE H. ) | |
| GOLDSMITH; G2,LLC, ) | |
| ) | |
| Appellees. ) | |
| _____ ) | |

Argued and Submitted on May 20, 2016
at Phoenix, Arizona

Filed - May 27, 2016

Appeal from the United States Bankruptcy Court
for the District of Arizona

Honorable George B. Nielsen, Jr., Bankruptcy Judge, Presiding

_____

Appearances:  H. Lee Horner Jr. of Goldstein, Horner & Horner, Attorneys PLLC argued for appellant Capital Options, LLC; Steven D. Jerome of Snell & Wilmer LLP argued for appellees C. Dennis Loomis and Baker Hostetler, LLP; Warren John Stapleton of Osborn Maledon, PA argued for appellees George H. Goldsmith and G2,LLC.

_____

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

-1-

Before: JURY, KURTZ, and JAIME,[**] Bankruptcy Judges.

In these related appeals chapter 11[1] debtor, Capital Options, LLC (CO), appeals from (1) the order dismissing its adversary complaint against George H. Goldsmith (Goldsmith) and G2, LLC (G2) with prejudice, and the order denying reconsideration of that order (BAP No. AZ-15-1167); (2) the order dismissing its adversary complaint against C. Dennis Loomis (Loomis) and Baker Hostetler, LLP (Baker) without prejudice (BAP No. AZ-15-1165); and (3) the order denying confirmation of CO's plan of reorganization, granting G2's motion to dismiss CO's bankruptcy case without prejudice, and denying CO's motion to extend the statute of limitations to file avoidance and turnover actions (Plan Denial Order) (BAP No. AZ-15-1166).[2]

In BAP No. 15-1167, CO sought declaratory relief against Goldsmith and G2 regarding its rights under G2's oral operating agreement. CO alleged that it held a 50% membership interest in G2 thereby entitling it to half of any distributions. Goldsmith, G2's purported sole member, disputed this contention.

---

[**] Hon. Christopher D. Jaime, United States Bankruptcy Judge for the Eastern District of California, sitting by designation.

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. "Rule" references are to the Federal Rules of Bankruptcy Procedure and "Civil Rule" references are to the Federal Rules of Civil Procedure.

[2] On May 25, 2015, CO moved to consolidate the three appeals. On June 30, 2015, the BAP issued an order denying consolidation because the orders on appeal were different and the underlying parties and proceedings were not identical.

-2-

The membership issue was never adjudicated because the bankruptcy court decided that CO's request for declaratory relief regarding its membership interest was essentially for breach of the oral operating agreement and time barred under California's two-year statute of limitations pertaining to oral contracts. The court rejected CO's tolling arguments and dismissed the adversary proceeding against Goldsmith and G2 with prejudice. The bankruptcy court subsequently denied CO's motion for reconsideration in which CO raised new arguments for the first time.

In BAP No. 15-1165, CO filed an adversary proceeding against Loomis and Baker, seeking turnover of G2's records and estate property owed to it based on its asserted 50% membership interest in G2. The complaint also alleged claims for avoidance of fraudulent transfers and fiduciary misconduct. The bankruptcy court found that all the claims asserted were dependent on CO's alleged membership interest in G2, adjudication of which the court previously decided was time barred. The court dismissed the adversary proceeding on this ground because without a membership interest CO could not possibly prevail. The dismissal was without prejudice in the event CO reversed the Goldsmith/G2 dismissal through its appeal.

In BAP No. 15-1166, because CO proposed to fund its plan of reorganization (Plan) with proceeds won from the Loomis/Baker litigation, the bankruptcy court found that the Plan was not feasible and administrative claims could not be paid in full on the effective date once the Loomis/Baker complaint was dismissed. The bankruptcy court denied confirmation of CO's

Plan and also granted G2's motion to dismiss the bankruptcy case without prejudice in the event CO prevailed in the Goldsmith/G2 matter on appeal.

For the reasons explained below:

(1) We conclude that the bankruptcy court properly dismissed the complaint in the Goldsmith/G2 matter on statute of limitations grounds. We also conclude that the court did not abuse its discretion in denying CO's motion for reconsideration of its dismissal order. We thus AFFIRM the bankruptcy court's ruling in BAP No. 15-1167;

(2) We further conclude that the bankruptcy court did not err in dismissing the Loomis/Baker adversary proceeding in its entirety. The court properly found that the claims for relief were all dependent upon CO establishing its 50% membership interest in G2. CO could not establish such an interest when its claim was based on a breach of the oral operating agreement and was time barred. Accordingly, we AFFIRM the bankruptcy court's dismissal of the Loomis/Baker adversary complaint in BAP No. 15-1165; and

(3) We also conclude that the bankruptcy court properly denied confirmation of CO's Plan on feasibility and other grounds. In addition, the bankruptcy court did not abuse its discretion in dismissing the underlying bankruptcy case without prejudice. Therefore, we AFFIRM the Plan Denial Order in BAP No. 15-1166.

///

///

///

-4-

# I.  FACTS

## A.  Prepetition Events

### 1.  Dispute over CO's membership interest in G2

G2 was formed in 2003 in California, but it is unclear who was involved in its formation.  It was either Goldsmith alone, Goldsmith and Donna Stephenson (Stephenson), or Goldsmith and Rich Gurnett (Gurnett).  G2 was an asset recovery firm that helped victims of financial fraud determine the perpetrators of the fraud and recapture the misappropriated funds.[3]

The record suggests that Stephenson and Goldsmith were the initial members of G2, each owning 50%.  CO was not an initial member since it was formed several years after the formation of G2.  The parties do not dispute that G2's operating agreement was oral.

When G2 was formed, Goldsmith's ex-girlfriend, Ida Fung (Fung) filed the original Articles of Organization (AO) with the California Secretary of State.  Fung checked the box on the AO form that showed management of G2 was vested in one manager.  Fung signed and filed a subsequent amendment to the AO with no box checked regarding how G2 was managed.

Stephenson later filed a "Statement of Information" with the California Secretary of State from 2003 to 2007 that listed Goldsmith as the manager of G2 and the only member.  However, for the tax years 2003 through 2006, G2 filed partnership tax returns with the Internal Revenue Service and California

---

[3] Due to the nature of the business, Goldsmith used the alias "Henry George" and Gurnett went by the alias of "Rich Douglas."

Franchise Tax Board which reflected that the right to share in 50% of the profits was held by each member and identified Goldsmith and Stephenson as members. For these years, Stephenson served as the tax matters partner of G2 and allegedly managed G2 together with Goldsmith and Gurnett.

Some years after G2 was formed, Stephenson and Gurnett established CO, an Arizona limited liability company, allegedly for estate planning purposes as to Stephenson's 50% membership interest in G2. Gurnett and Stephenson maintained that CO succeeded to Stephenson's membership interest in G2, but there is no documentation in the record that shows how that occurred. Nonetheless, tax returns for 2007, 2008 and 2009 showed that CO held a 50% interest in G2 for all purposes with Goldsmith as the other 50% member.

In an email dated December 10, 2007, Goldsmith acknowledged that Stephenson was a member in G2 and owned 50% of G2 that was "owned" by CO. He also acknowledged at various times in 2008 and 2009 that "Rich Douglas" was a co-owner and co-founder of G2, or that CO was entitled to 50% of the G2 revenues.

By the end of 2007, relations between the parties soured. According to Gurnett, Goldsmith asked Stephenson to "cook G2's books" so that Goldsmith could pay off some of his personal debts out of G2's account to reduce his income tax liability. Gurnett also alleged that Goldsmith engaged in other "illegal schemes." Goldsmith allegedly informed Gurnett that he would no longer work with Gurnett, effectively ending G2. From Gurnett's perspective, the parties agreed to wind up G2's affairs. However, Gurnett maintains that while he was hospitalized,

Goldsmith took over G2, removed Gurnett and Stephenson as administrators, changed all their passwords, and told service providers that they were no longer with the company.

On September 10, 2008, Stephenson filed a "Limited Liability Company Certificate of Amendment" with the California Secretary of State showing that G2 was managed by all its members. She signed the form as a member. Goldsmith contends that this filing was fraudulent.

On July 22, 2009, Goldsmith filed a corrected document with the California Secretary of State showing himself as the only member and manager. Gurnett contends that this filing was fraudulent.

Two weeks later, on August 5, 2009, Stephenson filed another document with the California Secretary of State's office on behalf of G2, again listing CO as a member. Finally on April 7, 2010, Goldsmith filed another document on behalf of G2 showing only Goldsmith as a member in G2.

At some point in 2010, Goldsmith retained a different CPA to prepare G2's tax returns and made himself the tax matters partner on this return, without a vote from CO. At that time, he reported that he was the sole member in G2 and signed the return. Around the same time, G2 evidently began receiving payments on account receivables.

**2.    The joint defense and cooperation agreement**

To temporarily avoid litigation regarding the validity and extent of CO's membership interest in G2, the parties entered into a joint defense and cooperation agreement (JDCA) on April 20, 2010. The agreement was for an indefinite period and

stated that Goldsmith denied that CO or Stephenson had any ownership interest in G2. It further provided:

> E. Capital Options, LLC, Richard Douglas Gurnett, and Donna Stephenson each acknowledges that George Henry Goldsmith asserts and contends (i) that neither Capital Options LLC nor Donna Stephenson (collectively "the Capital Parties") has any ownership interest in or to G2 LLC, (ii) that neither of the Capital Parties has any right to share in any fees paid or owing to G2 LLC by any clients of G2 LLC, and (iii) that neither of the Capital Parties has any separate or independent right to direct, manage, or control the enforcement or disposition of any G2 LLC claims against any G2 LLC clients or any other third party. Capital Options, LLC, Richard Douglas Gurnett, and Donna Stephenson each deny that such assertions and contentions as set forth in this Recital E are correct or valid. Nonetheless, Capital Options LLC, Richard Douglas Gurnett, and Donna Stephenson each acknowledges and affirms that the execution and performance of participation in this Agreement by George Henry Goldsmith is without prejudice to and shall not be asserted or relied upon as evidence in opposition to his assertions and contentions as set forth in this Recital E.

The agreement also designated Loomis, an attorney who represented Goldsmith, along with his law firm Baker, as attorney members in G2. Similarly, Gurnett and Stephenson's attorney, Marc Epstein (Epstein), and his law firm, Gaims, Weil, West & Epstein, LLP, were designated as attorney members in G2. Under the agreement, the attorney members were given authority to communicate and negotiate with third parties, including past and present clients of G2. The attorney members were required to act jointly, unanimously, and in writing to place all funds which were paid to G2 into one or more bank accounts requiring the signatures of all attorney members for withdrawals, subject to any court order to the contrary. This "escrow" provision survived termination of the agreement.

Paragraph K of the agreement provided:

-8-

Nothing in this Agreement is intended to create any attorney-client relationship, fiduciary duty, or any other duty of any kind between Baker Hostetler and/or C. Dennis Loomis, on the one hand, and any of Capital Options LLC, Richard Douglas Gurnett, and Donna Stephenson, on the other hand. All parties hereto agree that no such attorney-client relationship or duties exist.

A similar paragraph applied to Epstein and his firm.

In July 2010, the JDCA was amended to reflect that the attorney members and their clients agreed to settlement of G2's claims against Dominic Cusumano (Cusumano) and Atlas Free, Inc. (Atlas Free). The amendment further provided that the "client members" would cause G2 to distribute all settlement funds received from Cusumano and Atlas Free, directly or indirectly, within two days of receipt of such funds, 50% to Goldsmith and 50% to CO, with no deduction for attorneys' fees, costs, or otherwise. The amendment did not specify how proceeds from any of G2's remaining potential recoveries would be distributed. It further provided that the parties intended to resolve their disputes at some time in the future through negotiation, mediation, arbitration or court action.

**3. The Cusumano and Atlas Free settlement funds**

On August 6, 2010, Loomis sent an email to Epstein which stated that rather than distributing the Cusumano and Atlas Free settlement funds, estimated to be around $375,000, in the manner set forth in the amended JDCA, Goldsmith believed that the funds should be applied to G2's and its individual member/defendants'

legal costs in the "Silver and Morningstar" cases.[4] The email then detailed how representation of G2 and its individual members should be achieved and how legal costs would be divided if Gurnett agreed. If Gurnett did not agree, settlement funds would be used to pay the retainers for the attorneys in the Silver and Morningstar matters and then the remaining balance would be distributed 50/50 to CO and Goldsmith. The email further provided that going forward, unless Gurnett agreed in writing to pay 50% of all charges incurred by the attorneys in the Silver and Morningstar matters, such amounts would be deducted from the Cusumano and Atlas Free settlement funds.

In response, Epstein sent an email to Loomis urging him to reconsider his "threat" of "misappropriating" 50% of the settlement funds which had been entrusted to Baker, and to which CO was entitled pursuant to the amended JDCA. Epstein further maintained that Loomis' conduct "implicates a serious breach of fiduciary duty and breach of trust, a serious breach of the canons of ethics, conversion, and frankly, one or more crimes."

**4.  The Morningstar recovery**

One of G2's clients was Morningstar Holding Corporation (Morningstar). G2 successfully recovered embezzled funds for Morningstar, but Morningstar sued G2, along with Goldsmith and Gurnett individually, in 2010 in Idaho to avoid paying fees owed to G2. G2 counterclaimed. G2 and Goldsmith retained Thomas Angstman (Angstman) to represent them in the case. Goldsmith

---

[4] Silver and Morningstar were clients of G2. The Morningstar matter is further described below.

-10-

alleges that Gurnett evaded service and was removed from the case. Gurnett maintains he was never afforded the opportunity to participate. A court-ordered mediation produced a settlement which resulted in Morningstar paying a reduced fee to G2. In June 2012, settlement proceeds were paid to Angstman for fees with the remainder disbursed to Goldsmith.

**5.    The California state court lawsuit**

On June 11, 2011, CO sued Goldsmith and G2 in the California state court seeking the appointment of a receiver for G2 due to the alleged disbursement of settlement funds in violation of fiduciary obligations purportedly owed to CO. The allegations included facts regarding the deterioration of the parties' relationship, Goldsmith's hostile takeover of G2, and Goldsmith's misappropriation of money owed to CO. Despite extensive discovery, the state court declined to appoint a receiver, citing lack of evidence. The case was ultimately dismissed by CO's chapter 7 bankruptcy trustee.

**6.    Goldsmith designates himself as the sole member in G2 in 2011, 2012, and 2013 tax returns**

In a 2011 tax return, Goldsmith designated himself the tax matters partner and the sole member in G2. He also reported on the G2 form K-1 that he was a 100% member and reported on CO's K-1 that CO had no interest in G2 at any time in 2011. On the 2012 tax return, Goldsmith represented that he was the tax matters partner and that CO was now a 0% member and Goldsmith was the sole member. The 2013 tax return also showed Goldsmith as the sole member in G2 and made no mention of CO anywhere. It is not clear from the record when CO or its members became aware

-11-

of these returns.

### 7. Failed attempts to put G2 into an involuntary bankruptcy

On February 29, 2012, CO filed an involuntary chapter 7 petition against G2 in the Central District of California, but did not serve G2. The California bankruptcy court dismissed CO's involuntary petition by order entered on May 11, 2012.

Before the court dismissed the February 29 involuntary petition, Brent Johnson (Johnson), another alleged G2 creditor, filed a second involuntary petition against G2 on April 2, 2012. The lawyer for Johnson in the second involuntary case was the same as that for CO in the first involuntary case. Johnson moved for the appointment of an interim chapter 7 trustee to take custody of G2 and intercept any settlement proceeds. Gurnett supported this motion with a declaration, again asserting that CO was a 50% owner in G2. On May 31, 2012, the California bankruptcy court granted G2's motion to dismiss the involuntary proceeding, finding that the petition had not been filed by a creditor with an undisputed claim.[5]

## B. Bankruptcy Events

On June 14, 2012, CO filed a chapter 7 petition. On August 25, 2012, the chapter 7 trustee filed a notice to sell CO's interest in G2. G2 made the highest offer for this asset.

---

[5] G2 then moved for attorneys' fees. On September 25, 2012, the California bankruptcy court sanctioned Johnson over $117,000 finding it "suspicious, at a minimum, that Johnson's counsel was also C[apital] O[ptions]' counsel when it filed an involuntary against G2" and that Johnson's "actions and motives for filing [the bankruptcy] [were] questionable."

CO objected and moved to dismiss or convert the case. On September 26, 2012, the bankruptcy court entered an order converting CO's chapter 7 case to one under chapter 11.

On December 18, 2013, the United States Trustee (UST) moved to convert or dismiss the case. The UST asserted that CO had been in a chapter 11 proceeding for over a year and was unable to reorganize. According to the UST, CO owned no real property, had no secured or unsecured priority creditors, had approximately $207,000 in unsecured debt, and generated no income. The UST further noted that the case involved liquidation of CO's personal property such as its interest in G2.

Thereafter, CO filed a disclosure statement (DS) and Plan on February 11, 2014. The Plan was a litigation plan, dependent upon recovery of approximately $1,500,000 in assets in the hands of third parties based on CO's alleged 50% membership interest in G2. Around the same time, to collect these funds, CO filed numerous adversary complaints against third parties, including the Goldsmith/G2 and Loomis/Baker matters at issue in these appeals.

### 1. The Goldsmith/G2 adversary proceeding

On February 18, 2014, CO filed an adversary complaint against Angstman. Angstman filed a motion to dismiss the complaint, which the bankruptcy court granted, giving CO leave to amend to correct defects in the complaint.[6]

---

[6] The claims against Angstman were dismissed in November 2014.

On July 29, 2014, CO filed the amended complaint which added Goldsmith and G2 as defendants and asserted three claims for relief against them: (1) declaratory relief seeking to establish that CO held a 50% membership interest in G2; (2) derivative recovery of certain settlement funds owing to G2 allegedly negligently disbursed by Angstman and diverted to Goldsmith; and (3) turnover of G2's records.

On September 5, 2014, Goldsmith and G2 moved to dismiss the complaint asserting that (1) the statute of frauds made the oral operating agreement unenforceable; (2) the complaint was time barred under California's two-year statute of limitations for breach of an oral agreement; and (3) the bankruptcy court lacked jurisdiction over the action.

Instead of responding to the motion, CO moved to disqualify Osborn Maledon, counsel for Goldsmith and G2, alleging that under California law the firm had an "irreconcilable conflict of interest" in representing both Goldsmith and G2 in the adversary proceeding. Goldsmith and G2 responded, arguing that (1) Arizona law applied given that Goldsmith and G2's counsel practice in Arizona; (2) CO lacked standing to allege any conflict since it was not a member of G2 nor was it a client or former client of Osborn Maledon; and (3) under Arizona's ethical rules, there was no conflict in jointly representing Goldsmith and G2 under the circumstances.

On November 12, 2014, the bankruptcy court heard the motion for disqualification. The court noted that CO was not a client or former client of the Osborn Maledon firm and that under Arizona law, only in extreme circumstances should a party to a

-14-

lawsuit be allowed to interfere with the attorney-client relationship of his opponent. In the end, the court denied the motion for disqualification, finding that CO had not met its burden that it had initial standing to file a disqualification motion or that extreme circumstances existed such that it should be allowed to file such a motion. The bankruptcy court's ruling denying the motion was set forth in a minute entry dated November 12, 2014. No further order was submitted to the bankruptcy court.

Two weeks later, CO opposed the motion to dismiss by responding to Goldsmith's and G2's argument regarding the two-year statute of limitations under Cal. Code Civ. Proc. § 339. CO argued that the two-year statute was tolled due to Goldsmith's absence from California under Cal. Code Civ. Proc. § 351[7] and his active concealment of material facts that he was required to disclose to CO as a 50% managing member of G2. CO did not argue that a four-year statute of limitations pertaining to written contracts applied or that the limitations period was tolled due to the filing of the state court receivership action or § 108.

On January 20, 2015, the bankruptcy court granted

---

[7] This statute states,

If, when the cause of action accrues against a person, he is out of the State, the action may be commenced within the term herein limited, after his return to the State, and if, after the cause of action accrues, he departs from the State, the time of his absence is not part of the time limited for the commencement of the action.

-15-

Goldsmith's and G2's motion to dismiss, finding that CO knew at least by April 2010 when it entered into the JDCA that Goldsmith disputed that it held a membership interest in G2. Therefore, the complaint against Goldsmith and G2 was time barred since it was filed more than two years later.

The court rejected CO's tolling arguments based on Goldsmith's absence from the state and fraudulent concealment. With respect to Goldsmith's absence from California, the bankruptcy court noted inconsistencies in California case law regarding the constitutionality of Cal. Code Civ. Proc. § 351. In Filet Menu, Inc. v. Cheng, 71 Cal.App.4th 1276, 1282 (1999), the court held Cal. Code Civil Proc. § 351 constitutional and not an infringement on the commerce clause absent evidence that the defendant was engaged in interstate commerce. In Heritage Marketing & Insurance Services, Inc. v. Chrustawka, 160 Cal.App.4th 754 (2008) (followed by Dan Clark Family Ltd. Partnership v. Miramontes, 193 Cal.App.4th 219 (2011)), the California courts in the Fourth District invalidated the statute as applied to defendants who have permanently moved out of state. The Heritage court reasoned that the statute penalized people who moved out of state by imposing a longer statute of limitations on them in contrast to those who remained in the state. The court concluded that the commerce clause protected persons from such restraints on their movement across state lines. 160 Cal.App.4th at 763-64; see also Abramson v. Brownstein, 897 F.2d 389, 392 (9th Cir. 1990).

In the end, the bankruptcy court found that the tolling of the statute would apply only to Goldsmith who moved from

California in 2010. Relying on the previously cited cases, the court decided that Goldsmith's move would not toll the statute of limitations because Cal. Code Civ. Proc. § 351 would impair Goldsmith from engaging in interstate commerce.

Finally, the bankruptcy court found that CO had fallen short of the requirement to provide specific facts about the alleged fraudulent concealment with the same particularity as would be required for a cause of action for fraud.

In connection with Goldsmith's and G2's other arguments, the bankruptcy court concluded that it had jurisdiction over the adversary proceeding because the litigation was an estate asset and the only means available to fund CO's Plan.[8] The court further decided that it was not clear that the statute of frauds was implicated because there was at least one writing — the 2010 tax return signed by Goldsmith — which indicated that CO had an interest in G2. Accordingly, the bankruptcy court denied the motion to dismiss without prejudice as to the statute of frauds.

On January 29, 2015, the bankruptcy court entered its order granting the motion to dismiss on statute of limitations grounds and dismissing the adversary proceeding with prejudice.

On February 10, 2015, CO moved for reconsideration of the court's ruling under Civil Rule 59(e), made applicable by Rule 9023. There, CO argued for the first time that the four-year statute of limitations under Cal. Code Civ. Proc. § 337 applied to its litigation against Goldsmith and G2. CO

---

[8] Later in the hearing, counsel for Goldsmith and G2 indicated that they would consent to jurisdiction for purposes of the dismissal order.

maintained that after formation of G2 based on an oral operating agreement, Goldsmith made numerous affirmative, unambiguous, written acknowledgments of the actual agreement of the parties, including the emails and representations to the taxing authorities as described above. Due to these writings, CO argued that the four-year statute of limitations for suits on written contracts should apply. CO further asserted for the first time that the limitations period was tolled due to the state court receivership action. As discussed below, the court heard and decided the motion for reconsideration on April 21, 2015, in conjunction with other matters.

## 2. The Loomis/Baker adversary proceeding

On February 23, 2014, CO filed an adversary proceeding against Loomis and Baker. The amended complaint alleged that Loomis and Baker, as attorney members of G2 under the JDCA, owed a non-waivable fiduciary duty to CO as to all matters involving G2 and CO as a 50% G2 managing member. CO further alleged that Loomis and Baker had received G2 funds which were disbursed to Goldsmith without written authorization in violation of the JDCA. According to CO, Loomis and Baker breached their fiduciary duties (1) by refusing to account to CO for G2 funds received; (2) by not distributing 50% of the funds received pursuant to the JDCA; and (3) by misdirecting and distributing all G2 funds they received, including settlement funds from Cusumano and Atlas Free, to Goldsmith without CO's consent or court order. Based on these facts and others, CO alleged three claims for relief against Loomis and Baker: (1) turnover of G2's records; (2) turnover of estate funds in the amount of

$3,515,675; and (3) unspecified damages for breach of fiduciary duties.

On April 25, 2014, Loomis and Baker filed a motion to dismiss the complaint. They argued that the request for turnover of G2's records was "moot" since Baker had produced these documents during the state court receivership action. Loomis and Baker further asserted that the second claim for relief seeking turnover of "estate funds" should be dismissed under Civil Rule 12(b)(6) because CO failed to allege sufficient facts to establish that it was a member in G2 and entitled to 50% of G2's funds. According to Loomis and Baker, since there was a bona fide dispute pertaining to CO's entitlement to funds from G2, the claim for turnover should be dismissed. In connection with the breach of fiduciary duty claim, Loomis and Baker pointed to the provision in the JDCA which expressly provided that no fiduciary duty arose between Loomis and Baker on the one hand and CO, Gurnett and Stephenson on the other hand.

Finally, Loomis and Baker argued that they were the wrong defendants to litigate issues which were part of a long running dispute between CO and G2 and Goldsmith over whether CO was a legitimate member in G2 and, if so, whether it was owed any distributions from G2. Loomis and Baker contended that these issues were part of the Goldsmith/G2 adversary. They maintained that even if CO's claims against them were viable, the issues asserted in the complaint were not ripe until CO's membership interest in G2 and its right to distributions were established.

At a hearing on July 9, 2014, the bankruptcy court denied

-19-

Loomis' and Baker's motion to dismiss, without prejudice, and allowed the adversary proceeding against them to proceed.

Loomis and Baker subsequently moved for a stay of the adversary proceeding pending resolution of the Goldsmith/G2 adversary complaint. They maintained that at least two issues in that adversary were conditions precedent to the adjudication of issues in the adversary against them. According to Loomis and Baker, without a prior determination whether CO is a member and, if so, a managing member, of G2, a corporate dispute that must be litigated between CO and G2, CO could not pursue it claims against them: "If CO is determined not to be a member of G2, the adversary against them would be moot."

CO opposed the motion for a stay arguing that under the JDCA, Loomis and Baker agreed in writing, along with Epstein, to be joint "cashiers" of funds owed to G2. CO disputed Goldsmith's contention that it had breached the JDCA or that the JDCA was terminated.[9] CO further pointed out that even if the JDCA was terminated, the cashiering duties survived. According to CO, these duties were independent from Goldsmith's dispute over CO's membership interest in G2.

By agreement between the parties, a stay of the litigation applied until November 12, 2014. At the November 12, 2014 hearing, the bankruptcy court heard, among other matters, Loomis' and Baker's motion for a stay. CO argued that the stay should not be imposed since the issues with Loomis and Baker

---

[9] Goldsmith evidently asserted that the JDCA was terminated in writing. The parties did not cite to any portion of the record that contained this writing.

arose under the JDCA and required Baker to keep any G2 funds in trust. Instead, CO found out that Baker received $171,000, and that Baker and Loomis sent that check to Goldsmith who cashed it. CO contended that while its membership interest would determine where the funds were ultimately disbursed, the funds should still have been in trust.

Loomis and Baker again argued that the turnover claims in count one and count two of the complaint were dependent upon whether or not CO was a member, or potentially a managing member, before it could get either money or records. Regarding the breach of the JDCA, Loomis and Baker argued that even assuming CO was correct that the requirement of putting G2's funds in trust survived in perpetuity, if CO was determined not to be a member in G2, it was not entitled to any money in a lockbox. They further asserted that CO's membership interest in G2 had to be determined before it could establish damages for breach of fiduciary duties. Finally, Loomis and Baker noted that CO's only argument regarding specific sums due to CO was related to the amended JDCA. There, the non-attorney "members" in G2 agreed to have funds distributed in a certain way. Accordingly, Loomis and Baker asserted: "That would be a claim against Mr. Goldsmith, not a claim against Baker Hostetler." After hearing argument, the bankruptcy court decided to keep the stay in place pending further status conferences.

On January 21, 2015, the bankruptcy court issued an order requiring CO to pay the filing fee of $293 for filing the complaint within fourteen days of the order. CO responded by filing a motion to extend the time for paying the filing fee and

requested a status conference. Loomis and Baker objected to the extension of time, but did not object to a status hearing. In the objection, Loomis and Baker stated that at the status hearing they intended to reargue that the adversary proceeding should be dismissed since the court found that CO was barred by the statute of limitations from litigating its membership interest in G2. Since the membership interest was a condition precedent to CO's claims against Loomis and Baker, they again argued that the adversary proceeding should be dismissed. At a subsequent hearing, the bankruptcy court set oral argument for the motion to extend the time to pay the filing fee on April 21, 2015, but did not set the reargument of the motion to dismiss on calendar.

As discussed below, the bankruptcy court dismissed the adversary complaint against Loomis and Baker after denying CO's motion for reconsideration in the Goldsmith/G2 matter at the April 21, 2015 hearing.

### 3. The plan of reorganization

CO filed its DS and Plan in February 2014. Loomis and Baker, as well as other defendants in other adversary proceedings, asked CO to include in its DS and Plan a statement that approval of the DS or confirmation of the Plan would not adjudicate any facts or legal issues or constitute their consent to jurisdiction or venue. On April 29, 2014, the bankruptcy court ordered CO to resolve the issue with the defendants in the adversary proceedings and if no resolution could be reached, to include an insert in its DS and Plan describing the adversary defendants' position.

-22-

On October 6, 2014, CO filed an amended DS and Plan.[10] The amended DS and Plan did not mention the adversary defendants' position as required by the bankruptcy court's order. The bankruptcy court entered an order approving the amended DS on October 7, 2014.

Loomis, Baker, Goldsmith and G2 objected to the confirmation of CO's amended Plan arguing, among other things, that CO could not use its amended Plan to create jurisdiction and/or venue in the adversary proceedings against them, or determine facts and/or legal issues that could have a preclusive effect in the adversary proceedings. They also argued that the amended Plan was not feasible given that it was relying on future and speculative recoveries from the various adversary proceedings. As discussed below, the bankruptcy court held a final hearing on plan confirmation on April 21, 2015.

**4.    The April 21, 2015 hearing**

On April 21, 2015, the bankruptcy court heard CO's motion for reconsideration in the Goldsmith/G2 matter and held a final hearing on confirmation on CO's amended Plan. The stay of the Loomis/Baker matter was also continued to that date.

In connection with CO's motion for reconsideration, the court opined that it was inclined to deny the motion since CO's argument regarding the four-year statute of limitations was available at the time of the original briefing. CO's counsel

---

[10] On September 12, 2014, CO filed an amended DS which included an insert, drafted and provided by Baker's counsel, that described Baker's and the other adversary defendants' position. However, this insert was later omitted from the amended DS that was approved by the bankruptcy court.

acknowledged that his argument regarding the four-year statute of limitations "should have been made out of the gate." The bankruptcy court commented that if the argument should have been raised earlier, it was too late to raise it in a reconsideration motion. Although counsel responded by alluding to misinterpretation of the law or miscarriage of justice, the court declined to accept those theories. The bankruptcy court observed that any movant could advance a set of arguments, and, if they lost the argument at the first hearing, they could advance a second set of arguments later on and say: "If you don't consider these new arguments, it'll be a miscarriage of justice."

For these reasons, the bankruptcy court denied the motion for reconsideration. The court noted that the complaint stated that G2's operating agreement has at all times been oral. Next, the court pointed out that at no time did CO argue the four-year statute of limitations applied, instead asserting that the two-year statute had not run due to Goldsmith's absence from the state and his active concealment of material facts. The court concluded by stating that a motion for reconsideration may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation, citing Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 880 (9th Cir. 2009).

Following resolution of CO's motion for reconsideration in the Goldsmith/G2 matter, the bankruptcy court denied CO's oral motion for a stay of the various adversary proceedings while CO appealed the bankruptcy court's ruling in the Goldsmith/G2

-24-

matter. The court then concluded that since CO's litigation against Loomis/Baker was contingent on the establishment of its membership interest in G2 it could not state a claim which entitled it to relief. The court dismissed the adversary proceeding without prejudice.

Next, addressing plan confirmation, the bankruptcy court stated that it was not feasible because the only viable litigation regarding CO's membership and right to distributions from G2 had been dismissed. The court also found the Plan was not filed in good faith and could not meet the requirement under § 1129(a)(9)(A) to pay administrative claimants in full on the effective date. The court therefore denied confirmation.

In addressing dismissal of the case, the bankruptcy court opined that it was not a useful exercise to keep the bankruptcy case open when the only possibility for a plan was to be successful in appellate litigation. The court decided that conversion was not an option since there was already one unpaid chapter 7 trustee and there was no reason to run up any additional costs. The bankruptcy court dismissed the case without prejudice.

On April 28, 2015, the bankruptcy court entered the dismissal order in the Loomis/Baker matter. On April 29, 2015, the bankruptcy court entered the Plan Denial Order. On the same date, the bankruptcy court entered the order denying CO's motion for reconsideration in the Goldsmith/G2 matter. CO timely filed an appeal from each of these orders on May 12, 2015.

## II. JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C.

§§ 1334 and 157(b)(2)(L) and (O).  We have jurisdiction under 28 U.S.C. § 158.

## III.  ISSUES

A.   Whether the bankruptcy court erred by finding that CO's claims against Goldsmith and G2 were time barred under California's two-year statute of limitations relating to oral contracts;

B.   Whether the bankruptcy court abused its discretion in denying CO's motion for reconsideration of its ruling that CO's claims against Goldsmith/G2 were time barred;

C.   Whether the bankruptcy court abused its discretion in denying CO's motion to disqualify the attorneys for Goldsmith and G2 in the Goldsmith/G2 adversary proceeding;

D.   Whether the bankruptcy court erred by dismissing the Loomis/Baker adversary proceeding;

E.   Whether the bankruptcy court abused its discretion denying confirmation of CO's Plan; and

F.   Whether the bankruptcy court abused its discretion in dismissing CO's bankruptcy case.

## IV.  STANDARDS OF REVIEW

A bankruptcy court's decision as to whether a claim is barred by the statute of limitations is reviewed de novo.  Santa Maria v. Pac. Bell, 202 F.3d 1170, 1175 (9th Cir. 2000).  The bankruptcy court's decision whether a statute of limitations has been equitably tolled is generally reviewed for an abuse of discretion, unless the facts are undisputed, in which event the legal question is reviewed de novo.  Id.

A bankruptcy court's denial of a motion for reconsideration

-26-

is reviewed for abuse of discretion. First Ave. W. Bldg., LLC v. James (In re Onecast Media, Inc.), 439 F.3d 558, 561 (9th Cir. 2006).

A bankruptcy court's order denying disqualification of professionals is also reviewed for an abuse of discretion. COM-1 Info, Inc. v. Wolkowitz (In re Maximus Computers, Inc.), 278 B.R. 189, 194 (9th Cir. BAP 2002).

"The ultimate decision to confirm a reorganization plan is reviewed for an abuse of discretion." Computer Task Group, Inc. v. Brotby (In re Brotby), 303 B.R. 177, 184 (9th Cir. BAP 2003). A determination that a plan meets the requisite confirmation standards necessarily requires a bankruptcy court to make certain factual findings, which are reviewed for clear error. Id.

We review the bankruptcy court's decision to dismiss a case for abuse of discretion. Leavitt v. Soto (In re Leavitt), 171 F.3d 1219, 1223 (9th Cir. 1999).

To determine whether the bankruptcy court abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested" and (2) if it did, whether the bankruptcy court's application of the legal standard was illogical, implausible or "without support in inferences that may be drawn from the facts in the record." United States v. Hinkson, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc).

Findings of fact are reviewed under a clearly erroneous standard. A court's factual determination is clearly erroneous if it is illogical, implausible, or without support in the

record. Id.

We review a dismissal under Civil Rule 12(b)(6) de novo. Barnes v. Belice (In re Belice), 461 B.R. 564, 572 (9th Cir. BAP 2011) (citing AlohaCare v. Haw. Dept. of Human Services, 572 F.3d 740, 744 n.2 (9th Cir. 2009)). "When we conduct a de novo review, 'we look at the matter anew, the same as if it had not been heard before, and as if no decision previously had been rendered, giving no deference to the bankruptcy court's determinations.'" Id.

## V. DISCUSSION

**A. The bankruptcy court properly applied California's two-year statute of limitations and did not abuse its discretion in denying CO's motion for reconsideration (BAP No. 15-1167).**

CO's amended complaint alleged that "G2's operating agreement has at all times been oral." The complaint further alleged that the "G2 operating agreement provided that Goldsmith and Stephenson would be member managers."

Cal. Corp. Code § 17701.02(s) provides:

> An 'Operating agreement' means the agreement, whether or not referred to as an operating agreement and whether oral, in a record, implied, or in any combination thereof, of all the members of a limited liability company, including a sole member . . . . The term 'operating agreement' may include, without more, an agreement of all members to organize a limited liability company pursuant to this title.

The operating agreement is a contract among LLC members that governs the members' rights and obligations and is construed according to general principles of contract law. Ratliff v. Cochis Agric. Properties, LLC (In re Ratliff), 2010 WL6259955, at *7 (9th Cir. BAP October 13, 2010) (citing 1 Larry E. Ribstein & Robert R. Keatinge, Limited Liability

-28-

Companies § 4:16 (2003)).  Under California law, it is the policy of the limited liability statutes and the state "to give maximum effect to the principles of freedom of contract and to the enforceability of operating agreements."  See Cal. Corp. Code § 17701.07(a).

In California, the limitations period for breach of an oral contract is two years.  Cal. Code Civ. Proc. § 339.  Although CO did not plead a breach of contract claim, it sought a declaration that it was a member of G2 entitled to 50% of any distributions that went to G2's members.  The underlying basis for the requested declaration was necessarily based on the oral operating agreement.  Therefore, the related request for declaratory relief is governed by the same statute of limitations for oral contracts.  See United Pacific-Reliance Ins. Co. v. DiDomenico, 173 Cal.App.3d 673, 676-77 (1985); Leahey v. Dep't of Water and Power of City of L.A., 76 Cal.App.2d 281, 286 (1946).

Generally, the statute of limitations "begins to run upon the occurrence of the last element essential to the cause of action."  Brisbane Lodging, L.P. v. Webcor Bldrs., Inc., 216 Cal. App.4th 1249, 1257 (2013).  However, the time period may be tolled where the plaintiff does not immediately discover or suspect that wrongdoing has occurred.  Id.  Under the discovery rule, a cause of action accrues when the "'plaintiff either (1) actually discovered his injury and its negligent cause or (2) could have discovered injury and cause through the exercise of reasonable diligence. . . .'"  Id.  The discovery rule has been applied in "cases where it is manifestly unjust to

deprive plaintiffs of a cause of action before they are aware that they have been injured." Id. However, a plaintiff is "under a duty to reasonably investigate. A suspicion of wrongdoing, coupled with a knowledge of the harm and its cause, will commence the limitations period and those failing to act with reasonable dispatch will be barred." Id. A cause of action invariably accrues when there is a remedy available. Baker v. Beech Aircraft Corp., 39 Cal.App.3d 315, 321 (1974).

Here, the bankruptcy court found that CO knew by no later than April 20, 2010 — at the time Gurnett, Stephenson, and CO entered into the JDCA with Goldsmith — that Goldsmith disputed CO's asserted 50% membership interest in G2. The JDCA explicitly stated that Goldsmith disputed that CO or Stephenson (Capital Parties) had any ownership interest in G2, that neither of the Capital Parties had any right to share in any fees paid to or owing to G2 by any clients, and that neither of the Capital Parties had any separate or independent right to direct, manage, or control the enforcement or disposition of any G2 claims against G2, clients or any other third party. As the bankruptcy court found, this was direct notice to CO that there was a dispute regarding its membership in G2 and entitlement to distributions. Accordingly, the bankruptcy court correctly found that the two-year limitation period applied to the oral operating agreement and CO's last day to file a complaint for any claims against Goldsmith and G2 would have been April 20, 2012. This date was before CO's chapter 7 bankruptcy case was filed and more than two years before the amended complaint was filed.

-30-

To show error on appeal, CO makes several tolling and other arguments.

## 1. The fraudulent concealment discovery rule

CO also argues that the relevant statute of limitations was tolled under the fraudulent concealment discovery rule. To support this tolling argument, CO maintains that LLC members are fiduciaries to each other, Goldsmith never "unconditionally" refuted CO's membership interest until the 2014 tax returns, and Goldsmith concealed G2's books, records, and finances. CO further argues that if the amended complaint did not sufficiently plead fraud, it could have been amended.[11]

The principle of fraudulent concealment - a well established ground for equitable tolling in California is similar to the discovery rule. A defendant's fraud in concealing a cause of action against him tolls the applicable statute of limitations, but only for that period during which the claim is undiscovered by the plaintiff or until such time as

---

[11] In connection with the request for declaratory relief, the amended complaint alleges that (1) the terms of Angstman's representation of G2 in the Morningstar matter have been actively concealed from plaintiff by Angstman and Goldsmith; (2) the factual basis for Goldsmith's claim to $130,000 of the G2 funds (the distribution from Morningstar) has been actively concealed from plaintiff by Angstman and Goldsmith; (3) Angstman concealed from plaintiff the fact of the transfer of G2 funds and the details thereof; (4) Goldsmith persuaded Angstman to divert G2's Morningstar Idaho settlement funds in violation of Goldsmith's statutory fiduciary duty to plaintiff as a member of G2; (5) the location of the G2 funds from all sources, transferred by Angstman has, at all times, been concealed by Angstman and Goldsmith from plaintiff. Given the pleading standards for tolling a limitations period under a fraudulent concealment theory which we discuss below, these allegations are insufficient.

-31-

plaintiff, by the exercise of reasonable diligence, should have discovered it. Fuller v. First Franklin Fin. Corp., 216 Cal. App.4th 955, 962 (2013); Sanchez v. S. Hoover Hosp., 18 Cal.3d 93, 99 (1976). The burden of pleading and proving belated discovery of a cause of action falls on the plaintiff. Inv'rs Equity Life Holding Co. v. Schmidt, 195 Cal.App.4th 1519, 1533 (2011).

> When a plaintiff alleges the fraudulent concealment of a cause of action, the same pleading and proof is required as in fraud cases: the plaintiff must show (1) the substantive elements of fraud, and (2) an excuse for late discovery of the facts. With respect to the fraud itself, '[w]here there is a duty to disclose, the disclosure must be full and complete, and any material concealment or misrepresentation will amount to fraud sufficient to entitle the party injured thereby to an action.' As for the belated discovery, the complaint must allege (1) when the fraud was discovered; (2) the circumstances under which it was discovered; and (3) that the plaintiff was not at fault for failing to discover it or had no actual or presumptive knowledge of facts sufficient to put him on inquiry.

Cmty. Cause v. Boatwright, 124 Cal.App.3d 888, 900 (1984).

A plaintiff who fails to sufficiently plead such facts should normally be permitted to amend his or her complaint to do so. The record does not show that CO moved to amend its complaint to plead fraudulent concealment of the claims for relief. Further, although California's LLC law may have made Goldsmith a fiduciary to other members of G2, CO does not point to evidence in the record showing Goldsmith's active concealment of his dispute regarding CO's membership interest in G2. Finally, other than conclusory allegations that Goldsmith concealed G2's books, records, and finances, CO does not suggest there are additional facts it could plead to satisfy the

-32-

fraudulent concealment discovery rule. CO does not tell us the time or manner of discovery or say it was not aware of facts to make a reasonably prudent person sufficiently suspicious to investigate further.

In short, CO has not shown in what manner it could amend its complaint to meet the pleading requirements under the fraudulent concealment discovery rule. Regardless, any amended complaint could not plead around the fact that CO was on notice no later than April 2010 that Goldsmith explicitly disputed CO's membership interest in G2. Therefore, the bankruptcy court correctly found that tolling of the two year statute of limitations for oral contracts was not proper under CO's fraudulent concealment theory.

### 2. Section 108

Raised for the first time on appeal, CO maintains that § 108 tolled the two-year statute of limitations. In general, we do not consider issues raised for the first time on appeal, although we have discretion to hear previously unconsidered claims when the issue presented is purely one of law and does not depend on the factual record developed in the bankruptcy court. Cold Mountain v. Garber, 375 F.3d 884, 891 (9th Cir. 2004). Section 108 tolls a statute of limitations period that has not expired before the date of the filing of the petition. § 108(a). As discussed above, the two-year statute of limitations expired prior to the filing of CO's petition. Thus, § 108 does not apply as a matter of law.

### 3. Goldsmith's absence from California

In its reply brief, CO argues that the bankruptcy court

-33-

erred by finding that Goldsmith's absence from California did not toll the statute of limitations. CO maintains that the court found Cal. Code Civ. Proc. § 351 inapplicable since it impaired Goldsmith's engaging in interstate commerce, but there is nothing in the record that shows Goldsmith engaged in interstate commerce at any time. We do not consider arguments raised for the first time in reply and therefore there is no need to address this contention. See United States v. Gianelli, 543 F.3d 1178, 1184 n.6 (9th Cir. 2008); Sophanthavong v. Palmateer, 378 F.3d 859, 871–72 (9th Cir. 2004) (refusing to reach argument raised for the first time in a reply brief). The Ninth Circuit explained in Tovar v. United States Postal Service that it is improper to raise new arguments in a reply brief because the opposing party is deprived of an opportunity to respond. 3 F.3d 1271, 1273 n.3 (9th Cir. 1993).

**4      The motion for reconsideration: tolling due to the state court receivership action and applicability of the four-year statute of limitations for written contracts**

CO argues on appeal that the state court receivership action tolled the two-year statute of limitations. CO further asserts that the four-year statute of limitations applicable to written contracts applies due to Goldsmith's representations in emails and tax returns that CO was a member in G2 with a 50% interest. Both these arguments were raised for the first time in CO's motion for reconsideration. The bankruptcy court properly rejected the untimely arguments on the basis that they could reasonably have been raised earlier in the litigation. Marlyn Nutraceuticals Co., Inc., 571 F.3d at 880.

-34-

To avoid this result, CO argues on appeal that the applicability of the four-year statute of limitations was "sufficiently developed" for the bankruptcy court to address this issue in its motion for reconsideration. In this regard, CO points to the bankruptcy court's comments when it considered the statute of frauds as a basis for dismissal of the complaint. In declining to dismiss the complaint on statute of frauds grounds, the bankruptcy court observed that there was some written evidence of CO's membership in G2 due to the 2010 tax return and the Schedule K-1. CO maintains that these findings were sufficient to require the application of California's four-year limitations statute. We find this argument is not properly before us.

Whether the emails and tax returns constituted sufficient writings to satisfy the statute of frauds was not argued in the context of the statute of limitations. Moreover, the matter was not briefed and the case law supporting CO's position on the applicability of the four-year statute of limitations was not cited until the motion for reconsideration. Therefore, the issue was not raised sufficiently to permit the bankruptcy court to rule upon it. Under these circumstances, our abuse of discretion review precludes us from reversing the bankruptcy court's decision to decline to address issues raised for the first time in a motion for reconsideration. 389 Orange St. Partners v. Arnold, 179 F.3d 656, 666 (9th Cir. 1999).

In sum, we conclude that (1) the bankruptcy court properly dismissed the adversary complaint against Goldsmith and G2 because it was time barred under California's two-year statute

-35-

of limitations relating to oral contracts; (2) the bankruptcy court did not abuse its discretion in refusing to apply any of the tolling doctrines asserted; and (3) the bankruptcy court did not abuse its discretion in denying CO's motion for reconsideration based on its untimely arguments.

**5.    Denial of CO's motion for disqualification is moot**

The bankruptcy court's order dismissing CO's adversary complaint against Goldsmith and G2 with prejudice was a final order.  As a final order it incorporates and brings up for review the preceding non-final order denying CO's motion to disqualify Goldsmith's and G2's counsel, Osborn Maledon.  We conclude that disqualification of Osborn Maledon based on a claimed conflict of interest is moot in light of the bankruptcy court's proper dismissal of the adversary complaint on statute of limitations grounds.  Due to the dismissal, even if we were to reverse the bankruptcy court's denial of CO's disqualification motion, the reversal would not afford CO any effectual relief.

**B.    The bankruptcy court did not err by dismissing the Loomis/Baker adversary complaint under Civil Rule 12(b)(6) (BAP No. 15-1165).**

**1.   Jurisdiction**

We first briefly address our jurisdiction over this appeal. The order dismissing this adversary proceeding was without prejudice.  Generally, "[a]n order dismissing a complaint without prejudice is an interlocutory order."  In re Belice, 461 B.R. at 571-72.  Here, however, the dismissal without prejudice was basically in lieu of staying the adversary proceeding pending CO's appeal of the Goldsmith/G2 matter.  In

-36-

other words, if CO prevailed in its appeal of the Goldsmith/G2 matter, it could proceed to establish its membership interest in G2 and then reinstate the Loomis/Baker adversary proceeding which contained claims dependent upon that interest. Since CO has not been successful in its appeal of the Goldsmith/G2 matter, we conclude that the bankruptcy court's dismissal of the Loomis/Baker adversary proceeding without prejudice is sufficiently final to support our jurisdiction.[12]

### 2. The parties' arguments

CO argues on appeal that the bankruptcy court erred in dismissing the Loomis/Baker adversary proceeding in its entirety because not all of the relief sought was dependent upon a finding that CO had a membership interest in G2. Specifically, under the JDCA, Loomis and Baker as attorney members had the authority and obligation to act jointly, unanimously, and in writing to place any and all funds which are paid to G2 into one or more bank accounts requiring the signatures of all attorney members for withdrawals, subject to the effect of any future court order to the contrary. This provision survived termination of the agreement. According to CO, under the amended JDCA, the attorney members were supposed to escrow the settlement funds from third parties, including those received from Atlas Free and Cusumano. CO further maintains that under

---

[12] Even if this were not the case, under Rule 8003, we may treat a notice of appeal as a motion for leave to file an interlocutory appeal. As it would be in everyone's best interest to decide this appeal now, we grant leave to appeal to the extent it is necessary. See Travers v. Dragul (In re Travers), 202 B.R. 624, 626 (9th Cir. BAP 1996).

-37-

the amended JDCA, it was the client members who would direct them to distribute fifty percent of those funds to CO and fifty percent to Goldsmith within two days of receipt. CO argued that Loomis and Baker breached the JDCA by announcing in an email that they intended to misapply the Cusumano/Atlas Free funds by making various deductions. CO points out that its counsel immediately objected to this arrangement, but none of the Cusumano/Atlas Free funds were ever distributed to it.

In response, Loomis and Baker maintain that this "secondary claim" fails because (1) CO never raised this argument in its complaint against Loomis and Baker and (2) the provision in the amended JDCA upon which CO relies imposes obligations solely on the "client members" under the contract, not on Loomis and Baker who were expressly defined as the attorney members. Therefore, since Loomis and Baker had no contractual obligation to turn over any settlement funds allegedly owed to CO under the amended JDCA, the claim fails as a matter of law.

In reply, CO argues that the JDCA was breached because Loomis and Baker did not hold funds paid to G2 in escrow as required by the agreement and the amended JDCA which incorporated those terms. CO asserts that while the amended JDCA provided that the client members would cause the disbursement of the Cusumano/Atlas Free settlement funds, Loomis and Baker ignored their obligation to hold the funds under the JDCA. CO further contends that a plain reading of the JDCA and the amendment establish that Goldsmith and CO were to direct the attorney members to disburse the settlement funds. In sum, CO maintains that Loomis and Baker completely ignored the issue of

-38-

their unconditional, contractual obligation to hold G2 funds until a court says "disburse" or Goldsmith and CO agreed in writing to a disbursement, as set forth in the JDCA.

### 3. Analysis

While the parties make numerous arguments supporting their positions regarding the proper interpretation of the JDCA and its amendment, the bankruptcy court never interpreted those agreements because it was unnecessary to reach these issues. The amendment was not pled in the complaint and the central issue was whether the claims asserted were dependent upon CO's membership interest in G2.

In "Count One" of the amended complaint, CO seeks the turnover of G's books, records, accounts, ledgers, and other records. CO alleges in ¶ 23: "As a 50% member of G2, plaintiff is entitled to the information contained in the foregoing records of G2 in the custody of Loomis and Baker." In "Count Two" of the amended complaint, CO seeks the turnover of estate funds and alleges in ¶ 26: "Plaintiff . . . alleges that defendants Loomis and Baker have received . . . not less than $3,515,675, subject to proof at trial, which comprises property of this estate by reason of being plaintiff's 50% share of G2 funds . . . ." Finally, in "Count Three" of the amended complaint, CO seeks damages for fiduciary misconduct. CO alleges that Loomis and Baker owed a fiduciary duty to it at all times with respect "to the plaintiff's share" of G2 funds received. Taken together, these allegations show that all of CO's claims for relief depended upon its membership interest in G2. Without such an interest, it could not possibly win relief

against Loomis and Baker on the asserted claims. Accordingly, as a matter of law, the bankruptcy court's dismissal was proper.[13]

**C. The bankruptcy court did not abuse its discretion in denying confirmation of the Plan or in dismissing the underlying bankruptcy case (BAP No. 15-1166).**

### 1. Jurisdiction

Denial of plan confirmation is an interlocutory order. Bullard v. Blue Hills Bank, 135 S.Ct. 1686, 1693-94, 1696 (2015). Moreover, as noted above, the dismissal of the underlying case without prejudice, also an interlocutory ruling, was done to allow CO to reinstate the case in the event it prevailed on appeal in the Goldsmith/G2 matter. Under Rule 8003, we may treat a notice of appeal as a motion for leave to file an interlocutory appeal. Because we have decided that CO's adversary proceeding against Loomis and Baker was properly dismissed, there is no possibility that CO could fund a plan. There is thus no ground for the case to be reinstated. As it would be in everyone's best interest to decide this appeal now, we grant leave to appeal to the extent it is necessary. See In re Travers, 202 B.R. at 626.

### 2. The merits

Turning to the merits of the court's decisions to deny Plan confirmation and dismiss the bankruptcy case, there is no basis

---

[13] CO did not request leave to amend its complaint at any time, either in response to the initial motion to dismiss or after it received notice that Loomis/Baker intended to reargue that motion. As a consequence, dismissal without a provision regarding leave to amend was a proper ruling of the court based on the issues before it.

-40-

to find an abuse of discretion with either decision. Without a membership interest in G2, CO has no money to fund a plan, so denial of confirmation and dismissal were the logical rulings. Therefore, we summarily affirm.

## VI. CONCLUSION

For the reasons stated, we AFFIRM the bankruptcy court's decisions in these three related appeals.